## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SITNET LLC,<br><br>    Plaintiff,<br>  v.<br><br>META PLATFORMS, INC.,<br><br>    Defendant. | Case No.: 1:25-cv-6185<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff SitNet LLC ("SitNet"), by and through its undersigned counsel, as and for its Complaint against Defendant Meta Platforms, Inc. (f/k/a Facebook, Inc.) ("Meta"), alleges as follows:

### NATURE OF THE ACTION

1.      This action is for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*.  As further stated herein, SitNet alleges that Meta infringes one or more claims of patents owned by SitNet.  Accordingly, SitNet seeks monetary damages and injunctive relief in this action, in order to stop Meta's infringement of U.S. Patent Nos. 10,117,290, 12,120,769, 12,238,815, 12,245,325, 12,256,463, and 12,336,052 (collectively, the "Patents-in-Suit").

### THE PARTIES

2.      SitNet is a Delaware limited liability company with its principal place of business at 413 W 14th St., Suite 231, New York, NY 10014.

3.      On information and belief, Meta is a publicly traded corporation organized and existing under the laws of the State of Delaware and is registered and authorized to do business in

the State of New York, and maintains multiple places of business in New York, including at 50

Hudson Yards, New York, NY 10001, 380 W 33rd St., New York, NY 10001, and 770 Broadway,

New York, NY 10003.

4.      Among Meta's products is Facebook, which Meta describes as follows:

> Facebook helps give people the power to build community and bring the
> world closer together.  It's a place for people to share life's moments and
> discuss what's happening, nurture and build relationships, discover and
> connect to people with shared interests, and create economic opportunity.
> They can do this through Feed, Reels, Stories, Groups, Marketplace, and
> more.[1]

## JURISDICTION AND VENUE

5.      This is an action for patent infringement arising under the patent laws of the United

States.  This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331

and 1338(a), as well as 28 U.S.C. § 1367(a).

6.      This Court has personal jurisdiction, including general and specific jurisdiction,

over Meta.  Meta is registered with the New York State Department of State, and is registered to

accept service of process, care of Corporation Service Company, 80 State Street, Albany, New

York 12207.  On information and belief, Meta conducts business in, has continuous and systematic

contacts with, and has committed acts of patent infringement in this District, including its places

of business at 50 Hudson Yards, New York, NY 10001, 380 W 33rd St., New York, NY 10001, and

770 Broadway, New York, NY 10003, and it has established minimum contacts with this forum

---

[1] Meta Platforms, Inc. Form 10-K for fiscal year ended December 31, 2024, p. 7 (accessible at
https://d18rn0p25nwr6d.cloudfront.net/CIK-0001326801/a8eb8302-b52c-4db5-964f-
a2d796c05f4b.pdf).

state such that the exercise of jurisdiction over Meta would not offend traditional notions of fair play and substantial justice.

7.      Venue is proper in this Court as to Meta under 28 U.S.C. §§ 1391 and 1400(b). Meta resides in this District because of its significant presence and activities in this District.

8.      On information and belief, Meta markets, offers for sale, sells, and/or uses products and/or services, including those presently accused of infringement, in this District.  Further on information and belief, Meta markets, offers for sale, and/or sells products and/or services, including those presently accused of infringement, to customers and potential customers in this District.

9.      Further, on information and belief, Meta has offered and sold, and continues to offer and sell, its infringing products and services in this District.  On information and belief, Meta designs, uses, distributes, sells, and/or offers to sell the infringing products and/or services to consumers and businesses in this District.

10.     On information and belief, Meta is a large company with global reach and billions of dollars of annual revenue.  Litigating this case in this District, where Meta maintains a place of business, would be convenient to Meta and would serve the interests of justice.

**PATENTS-IN-SUIT**

11.     On October 10, 2018, the United States Patent and Trademark Office (the "Patent Office") duly and legally issued U.S. Patent No. 10,117,290 (the "'290 Patent") entitled "Method and system for using a situational network."  A true and correct copy of the '290 Patent is attached hereto as Exhibit 1.

12.     On October 15, 2024, the Patent Office duly and legally issued U.S. Patent No. 12,120,769 (the "'769 Patent") entitled "Method and system for using a situational network." A true and correct copy of the '769 Patent is attached hereto as Exhibit 2.

13.     On February 25, 2025, the Patent Office duly and legally issued U.S. Patent No. 12,238,815 (the "'815 Patent") entitled "Method and system for using a situational network." A true and correct copy of the '815 Patent is attached hereto as Exhibit 3.

14.     On March 4, 2025, the Patent Office duly and legally issued U.S. Patent No. 12,245,325 (the "'325 Patent") entitled "Creating a projection of a situational network." A true and correct copy of the '325 Patent is attached hereto as Exhibit 4.

15.     On March 18, 2025, the Patent Office duly and legally issued U.S. Patent No. 12,256,463 (the "'463 Patent") entitled "Targeted advertising in a situational network." A true and correct copy of the '463 Patent is attached hereto as Exhibit 5.

16.     On June 17, 2025, the Patent Office duly and legally issued U.S. Patent No. 12,336,052 (the "'052 Patent") entitled "Method and system for using a situational network." A true and correct copy of the '052 Patent is attached hereto as Exhibit 6.

17.     SitNet is the sole and exclusive owner of all right, title and interest to and in the Patents-in-Suit, including the right to sue for past infringement, and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. SitNet also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

### *Meta's Knowledge of the Patents-in-Suit*

18.     On information and belief, Meta is a highly sophisticated company that actively monitors the intellectual property landscape and is, or should have been, aware of relevant patents filed by others in its field.

19.     On July 9, 2012, Meta filed a patent application that resulted in U.S. Patent No. 9,412,136, entitled Creation of Real-time Conversations Based on Social Location Information, which issued on August 9, 2016.  During the prosecution of that patent, Meta was made aware of U.S. Patent 8,045,455, which is a family member that shares the same priority application as the Patents-in-Suit.

20.     Therefore, Meta knew or should have known of one or more of the Patents-in-Suit prior to service of this Complaint.

21.     On July 24, 2023, SitNet filed a lawsuit in this District having case number 1:23-cv-6389 against Meta and asserting infringement of U.S. Patent Nos. 11,470,682, 9,877,345, 8,332,454, and 8,249,932, each of which are part of the same family of patents as the Patents-in-Suit.  Therefore, Meta knew, or should have known, of each of the Patents-in-Suit as of their respective issue dates.

## FACTUAL ALLEGATIONS

## I.     TECHNOLOGY BACKGROUND

22.     Nearly two decades ago, the inventors, including several affiliated with The Weather Channel ("TWC") in Atlanta, Georgia, began using networking and telecommunications equipment to address issues relating to weather and safety.  In particular, mobile applications were developed to enable devices capable of determining a user's location to receive highly pertinent information related to situations and events that could impact them (positively or negatively).

5

23.    The inventors invented the unconventional concept of a "situational network" (sometimes abbreviated as a "SitNet") in which an event or "situation" becomes the basis for the creation of a situational network through which parties can be interconnected and receive information regarding an event or situation.  The importance of this invention was immediately recognized because of its ability to identify parties that would be potentially impacted by an event or situation and interconnect them by establishing a situational network that would allow for acknowledgement that they are safe in a crisis, aware of, registered for, and able to correspond regarding an event, and to receive supplemental information items related to the event or situation.

24.    The situational network works by forming a subset network within a larger network, allowing for increased efficiency and faster response times when interconnecting the parties within the subset network when compared to conventional network architectures.  At the time of its invention, the situational network represented an unconventional architecture, implementing a dynamic connection between users which improved upon then-conventional network architectures that were only capable of maintaining static connections of users.

25.    This pioneering work resulted in the filing of a provisional patent application with the Patent Office on February 2, 2007, which was assigned application number 60/887,843.  Based on that provisional application, regular patent applications were filed, resulting in a portfolio of patents, including the Patents-in-Suit.

26.    The Patents-in-Suit provide for the establishment of a situational network that includes connections of links within or among a set of participant devices ('769 Patent, col. 4, ll. 20 – 24, 50 – 64). These interconnections are formed between participant devices on a computer network to allow for the management of multi-dimensional relationships between persons or entities across the larger network, which the Patents-in-Suit refer to as a "N-dimensional social

network" or "NDSN" ('769 Patent, col. 15, ll. 1 – 10). Additionally, the Patents-in-Suit incorporate the use of a Personal Information Aggregator ("PIA") associated with a user and/or node of the situational network which stores, organizes, and controls the personal information of a user ('769 Patent, col. 8, ll. 4 – 41). Similar functionality is provided at the group level in the form of a Community Information Aggregator ("CIA") which aggregates and allows for selected use of information at the group or community level ('769 Patent, col. 9, ll. 9 – 18).

27.    The Patents-in-Suit teach a number of advantages that stem from the creation of situational network as disclosed. For example, a set of users can be projected from the NDSN, with this projected view enabling management of a smaller portion of the entire social network ('769 Patent, col. 15, ll. 28 – 33) through the formation of a situational network architecture allowing for an enhanced network architecture with faster load times and reduced usage of resources. This unconventional network architecture was a critical innovation. At the time social networks were taking off, the computational difficulties with identifying and interconnecting the appropriate subset of parties that are impacted by a situation, but for the innovation of the situational network, were computationally intensive at best and computationally impossible at worst due to the limitations of conventional network architectures. The situational network inventions of the Patents-in-Suit and their unconventional network architecture allows for the development of a "projected" network that can reduce resource requirements such as CPU speed and memory size ('769 Patent, col. 17, ll. 4 – 32).

28.    The technological innovations provided by the situational network of the Patents-in-Suit enables a number of practical advantages, including providing a network architecture that allows for the identification of individuals impacted by a crisis such as a hurricane, earthquake, or terrorist event, and asks them to check in if they are safe. In the context of the social network this

then allows individuals to check on individuals within the network, such as friends and relatives, to see that they are safe ('769 Patent, col. 27, ll. 20 – 23).

29.    The situational network of the Patents-in-Suit also provides for projections to be made to create a subnetwork that allows individuals to connect to an event node (*e.g.*, "where the situation is a social event, such as a concert or a festival" ('769 Patent, col. 31, l. 64 – col. 32, l. 12)) to receive information about an event ('769 Patent, col. 20, ll. 8 – 17).  Importantly, the situational network allows for the transmission of supplemental information including targeted information or advertisements to the subset of individuals created in the projection ('769 Patent, col. 28, ll. 34 – 62).

30.    The ability of the situational network of the Patents-in-Suit to form projections of impacted users, interconnect the users (amongst themselves as well as with friends and family), and provide them with information and relevant advertisements is based on the key insight the inventors had regarding how the nodes and links/edges of a social network could be created based on an event to readily select the appropriate subset of individuals and then use these relationships to establish a situational network. In addition, the claimed inventions of the Patents-in-Suit enhance the efficiency and distribution of information amongst the members of the formed situational network and among others who are not members of the situational network.

31.    At the time of the invention of the situational network disclosed and claimed in the Patents-in-Suit, Meta had only recently (in September of 2006) released its Facebook product (previously only available to students, academics, and select companies) to the public.  By January

2007, Meta's Facebook user base was nearly 14 million.[2] Meta announced its targeted advertising services in its announcement[3] on November 6, 2007.  Meta built their initial targeted advertising platform using conventional network technologies to reach relevant parties from the social network using their Facebook product.

32.     In the 2007 timeframe, the Events' features of Facebook were limited to web pages that provided information about an event including descriptions and photos, as well as a confirmed guest list that allowed a user to see if their friends and users were attending the event.[4]  Although Facebook provided tools to locate relevant events (though searches and filters), it put the burden of locating the relevant events on the user and had no ability to project events relevant to the user from the social network. Nor did it provide for the features of the situational network allowing users to establish connections with the event node based on the projection, and for relevant parties to send targeted information to individuals impacted by or attending the event.  It was not until the launch of the Events app on Facebook[5] in 2016 that Facebook provided for a full set of features based in part on the projection of the relevant parties – in other words, formation of a situational network – from the larger social network.

33.     It was not until late 2014 – more than 7 years after the filing of the SitNet provisional patent application – that Meta launched the Safety Check feature of Facebook, with its

---

[2] Exhibit 15, Fred Vogelstein, *How Mark Zuckerberg Turned Facebook Into the Web's Hottest Platform*, Wired (Sept. 6, 2007), https://www.wired.com/2007/09/ff-facebook/ (retrieved July 18, 2023).
[3] Exhibit 16, https://about.fb.com/news/2007/11/facebook-unveils-facebook-ads/ (retrieved July 18, 2023).
[4] Facebook for Dummies, 2008, pp. 205 – 210.
[5] Exhibit 17, https://about.fb.com/news/2016/10/introducing-the-events-from-facebook-app/ (retrieved July 18, 2023).

first use being the April 2015 earthquake in Nepal.[6]  In its initial launch, the Safety Check feature

enabled users to let their friends and family know that they are safe during a crisis.  The feature

was renamed/upgraded to Crisis Response[7] in 2017.

34.    On information and belief, Meta uses Crisis Response-related data including the

projections made from the social graph/network, to enhance its database and monetize its users

through network effects and the flywheel effect.[8]  Taking aside use of personal data, the financial

benefits to Meta based on individuals logging on to Facebook to check Safety Check is significant.

Mark Zuckerberg, Meta's Founder, Chairman and Chief Executive Officer, himself noted that more

than seven million people used Safety Check – and hence spent time on Facebook – following the

Nepal earthquake.[9]  An update to Safety Check, called Community Help, was launched in 2017 to

allow individuals the ability to find and give help, and message others directly to connect after a

crisis, making the product available for natural and accidental incidents, according to Naomi Gleit,

a Meta vice president at the time.[10]  Meta has also incorporated a Safety Check crisis response tool

---

[6] Exhibit 18, https://about.fb.com/news/2014/10/introducing-safety-check/ (retrieved July 18, 2023).

[7] Exhibit 19, https://about.fb.com/news/2017/09/a-new-center-for-crisis-response-on-facebook/ (retrieved July 18, 2023).

[8] *See, e.g.*, Exhibit 68, https://www.vox.com/videos/2018/4/11/17226430/facebook-network-effect-video-explainer; Exhibit 69, https://www.nfx.com/post/network-effects-facebook; Exhibit 70, https://youngmoneycap.substack.com/p/facebooks-impenetrable-flywheel (retrieved July 27, 2025).

[9] Exhibit 20, https://www.vox.com/2015/4/30/11562080/seven-million-people-used-facebooks-check-in-feature-after-nepal (retrieved July 18, 2023).

[10] Exhibit 21, https://markets.businessinsider.com/news/stocks/facebook-expands-safety-check-to-facilitate-aid-in-emergencies-1001733741 (retrieved July 18, 2023).

for Workplace, its paid application that provides social network features (including situational network projections) for businesses.[11],[12]

35.     In addition, Facebook includes an Advertising (Ad) Platform that allows users to create targeted advertising, and in doing so creates a situational network to provide targeted advertising to a subset of users within its network.  As explained in Facebook's Ad Platform documentation, targeted advertising includes the steps of creating a campaign, defining targeting, creating a plurality of ads, and scheduling delivery of the ads.[13]  After a user follows the steps and the advertising is activated, Facebook establishes a situational network and automatically connects the devices of various individuals to the situational network.[14]

36.     In order to establish the situational network, Facebook's Ad Platform includes Personalization Algorithms, Lookalike Audiences, Custom Audiences, Dynamic Audiences and other Targeting Options.[15]

## II.     PATENT ELIGIBILITY OF THE CLAIMED INVENTIONS

37.     The Patents-in-Suit are enforceable, valid, and claim patent-eligible subject matter.

38.     The Patents-in-Suit each claim priority to the SitNet provisional application, U.S. Serial No. 60/887,843, filed on February 2, 2007, and are directed to systems and methods reciting a situational network.

---

[11] Exhibit 22, https://engineering.fb.com/2018/10/09/web/safety-check-for-workplace/ (retrieved July 18, 2023).
[12] Exhibit 23, https://www.facebook.com/help/work/touch/472442953088966 (retrieved July 18, 2023).
[13] Exhibit 24, https://developers.facebook.com/docs/marketing-apis/get-started (retrieved July 18, 2023).
[14] Exhibit 24, https://developers.facebook.com/docs/marketing-apis/get-started (retrieved July 18, 2023).
[15] Exhibit 25, https://developers.facebook.com/docs/marketing-api/audiences (retrieved July 18, 2023).

39.     Each Patent-in-Suit recites claims which are directed to aspects of a "situational network," among other things.  The "situational network" claimed by the Patents-in-Suit was an unconventional network architecture that did not exist prior to the shared priority date of the Patents-in-Suit.

40.     As noted above, in a situational network, an event or "situation" becomes the basis for the creation of a network or subnetwork through which parties can be interconnected and can receive information regarding an event or situation.  The situational network architecture claimed by each of the Patents-in-Suit represented a departure from conventional techniques.

41.     Different types of networks have been invented throughout the history of computer networking.  Examples of these different types of networks include local area networks, wide area networks, personal area networks, satellite networks, fiber optic networks, point-to-point networks, internet protocol networks, asynchronous transfer mode networks, frame relay networks, telephone networks, circuit-switched networks, packet-switched networks, etc.  It is known in the field that each of these networks represented an unconventional departure from prior networking technologies, as they represented an improvement to the prior computer networking technologies.    Situational networks represented an unconventional departure from prior networking technologies, just like each of the aforementioned networks at the time of their respective inventions.

42.     Prior to the invention of the Patents-in-Suit, conventional networks were static and could not be created on the basis of an event or situation.

43.     The Patents-in-Suit identified and solved the problem of non-participants – individuals that are registered on the network, but not currently interacting with an impacted subset of users – being able to efficiently communicate with other impacted users during an event or

situation through the creation of a situational network, as reflected in the claims of each of the Patents-in-Suit.

44.    Conventional systems failed to include the ability for non-participants to communicate with impacted users because conventional networks were static and had no mechanism for automatically identifying impacted individuals (including non-participants) and interconnecting them within the network.

45.    The Patent Office has confirmed that the claimed features of the Patents-in-Suit are unconventional.  For instance, during prosecution of the '769 Patent, the Patent Office did not reject any of the pending claims based on prior art, and instead only issued a double patenting rejection based on SitNet's own applications and patents which was overcome by filing a terminal disclaimer.  *See* Exhibit 13, pp. 2-11, Non-Final Rejection dated July 16, 2024; Notice of Allowance dated September 10, 2024.

46.    In allowing the case, the Patent Office identified several prior art systems which were "pertinent to applicant's disclosure" and allowed the pending claims over those systems.

47.    In particular, the Patent Office identified the following prior art which the pending claims were deemed inventive over:

Balfanz et al. [ US Patent Application No 2005/0129240 ] discloses secure ad-hoc and/or dynamic command and control operations such are needed for Incident Command Systems or other emergency response systems that require simplicity and rapid deployment among disparate responder teams.

Forte [ US Patent Application No 2003/0181209 ] discloses the system for provides, for roll call, priority preemption and seamless switching services to and from circuit and packet communication devices

Black et al. [ US Patent Application No 2002/0116485 ] discloses period roll calls may be conducted between the NMS servers and the network devices to which they are connected

*See* Exhibit 13 at p.7.

48.    Further, during prosecution of the '815 Patent, the Patent Office did not reject any of the pending claims based on prior art, and instead only issued a double patenting rejection based on SitNet's own applications and patents which was overcome by filing a terminal disclaimer. *See* Exhibit 13, pp. 12-21, Non-Final Rejection dated July 3, 2024; Notice of Allowance dated January 29, 2025.

49.    In allowing the case, the Patent Office identified several prior art systems which were "pertinent to applicant's disclosure" and allowed the pending claims over those systems.

50.    In particular, the Patent Office identified the following prior art which the pending claims were deemed inventive over:

14

Balfanz et al. [ US Patent Application No 2005/0129240 ] discloses secure ad-hoc and/or dynamic command and control operations such are needed for Incident Command Systems or other emergency response systems that require simplicity and rapid deployment among disparate responder teams.

Forte [ US Patent Application No 2003/0181209 ] discloses the system for provides, for roll call, priority preemption and seamless switching services to and from circuit and packet communication devices

Black et al. [ US Patent Application No 2002/0116485 ] discloses period roll calls may be conducted between the NMS servers and the network devices to which they are connected

*See* Exhibit 13 at p.17.

51.     Further, during prosecution of the '325 Patent, the Patent Office did not reject any of the pending claims based on prior art, and instead only issued a double patenting rejection based on SitNet's own applications and patents which was overcome by filing a terminal disclaimer. *See* Exhibit 13, pp. 22-34, Non-Final Rejection dated December 11, 2024; Notice of Allowance dated January 17, 2025.

52.     In allowing the case, the Patent Office identified several prior art systems which were "pertinent to applicant's disclosure," but allowed the pending claims over those systems.

53.     In particular, the Patent Office identified the following prior art which the pending claims were deemed inventive over:

15

Rapaport et al. [ US Patent No 8,539,359 ] discloses social network driven

indexing for instantly clustering people with concurrent focus on same topic

Sutherland [ US Patent Application No 2017/0318419 ] discloses notification and

communication system using geofencing to identify members of a community

Wang [ US Patent Application No 2011/0019587 [ discloses dynamic information

exchange on location aware mesh network devices

*See* Exhibit 13 at p. 27.

54.     Further, during prosecution of the '463 Patent, the Patent Office did not reject any

of the pending claims based on prior art, and instead only issued a double patenting rejection based

on SitNet's own applications and patents which was overcome by filing a terminal disclaimer. *See*

Exhibit 14, p. 2-11, Non-Final Rejection dated November 29, 2024; Notice of Allowance dated

February 3, 2025.

55.     In allowing the case, the Patent Office identified several prior art systems which

were "pertinent to applicant's disclosure," but allowed the pending claims over those systems.

56.     In particular, the Patent Office identified the following prior art which the pending

claims were deemed inventive over:

Trayford et al. [ US Patent Application No 2004/0038671 ] discloses method and

system for providing traffic and related information

Chen et al. [ US Patent Application No 2006/0176847 ] discloses method for

establish and organize an ad-hoc wireless peer to peer network.

*See* Exhibit 14 at p.6.

57.      Further, during prosecution of the '052 Patent, the Patent Office did not reject any of the pending claims based on prior art, and instead only issued a double patenting rejection based on SitNet's own applications and patents which was overcome by filing a terminal disclaimer.  See Exhibit 14, pp. 12-25, Non-Final Rejection dated March 13, 2025; Notice of Allowance dated May 8, 2025.

58.      In allowing the case, the Patent Office identified several prior art systems which were "pertinent to applicant's disclosure," but allowed the pending claims over those systems.

59.      In particular, the Patent Office identified the following prior art which the pending claims were deemed inventive over:

Balfanz et al. [ US Patent Application No 2005/0129240 ] discloses secure ad-hoc and/or dynamic command and control operations such are needed for Incident Command Systems or other emergency response systems that require simplicity and rapid deployment among disparate responder teams.

Forte [ US Patent Application No 2003/0181209 ] discloses the system for provides, for roll call, priority preemption and seamless switching services to and from circuit and packet communication devices.

Black et al. [ US Patent Application No 2002/0116485 ] discloses period roll calls may be conducted between the NMS servers and the network devices to which they are connected.

Trayford et al. [| US Patent Application No 2004/0038671 ] discloses method and    system for providing traffic and related information.

Chen et al. [ US Patent Application No 2006/0176847 | discloses method for establish and organize an ad-hoc wireless peer to peer network.

Rapaport et al. [ US Patent No 8,539,359 ] discloses social network driven indexing for instantly clustering people with concurrent focus on same topic.

Sutherland [ US Patent Application No 2017/0318419 | discloses notification and communication system using geofencing to identify members of a community.

Wang [ US Patent Application No 2011/0019587 [ discloses dynamic information exchange on location aware mesh network devices.

*See* Exhibit 14, pp. 17-18.

18

60.     Further, during prosecution of the '290 Patent, the Patent Office did not reject any of the pending claims based on prior art, and instead only issued a double patenting rejection based on SitNet's own applications and patents which was overcome by filing a terminal disclaimer. *See* Exhibit 14, pp. 26-46, Non-Final Rejection dated February August 9, 2017; Final Rejection dated February 27, 2018; Notice of Allowance dated June 29, 2018.

61.     Therefore, the Patent Office confirmed during prosecution of the Patents-in-Suit that the situational network and its innovative architecture, as claimed in the Patents-in-Suit, is an unconventional improvement over prior art networking technologies.

62.     Meta's own documentation confirms that situational network architecture is an improvement over conventional network architectures.  For instance, Meta posted an article online on June 2, 2016, entitled "Safety Check: Streamlining deployment around the world."[16]

63.     In this article, Meta described the goals of Facebook's Safety Check feature, stating that "[o]ne of Safety Check's strengths is its ability to identify people who are likely in an affected area, collect their safety status, and quickly send that information out to friends and family.  We want to reach people and spread the good news as quickly as possible." [17]

64.     Meta admitted that "[t]his goal immediately presented new challenges. Most products at [Meta] are 'pull' models, meaning we present some kind of experience when you open the Facebook app. Safety Check is a 'push' model, meaning we proactively send everyone in the affected area a notification asking if they are safe." [18]

---

[16] Exhibit 26, https://engineering.fb.com/2016/06/02/web/safety-check-streamlining-deployment-around-the-world/ (retrieved July 18, 2023).

[17] Exhibit 26, https://engineering.fb.com/2016/06/02/web/safety-check-streamlining-deployment-around-the-world/ (retrieved July 18, 2023).

[18] Exhibit 26, https://engineering.fb.com/2016/06/02/web/safety-check-streamlining-deployment-around-the-world/ (retrieved July 18, 2023).

65.    Meta further explained the problem as follows: "[t]he push model presents a difficult problem when launching Safety Check: How do we quickly find all the people likely to be in the affected area?  Previous activations have ranged from a small city in Canada with only 60,000 residents to more than 20 million people in Ecuador after an earthquake. We needed an approach that could handle this range of population sizes with both accuracy and speed, but also remain stable and ready to launch at a moment's notice." [19]

66.    Thus, Meta sought to overcome technological challenges with using conventional network technologies during their implementation of the Safety Check feature in Facebook.

67.    Meta considered and rejected multiple conventional approaches to the problem because those approaches "require[d] a large amount of storage and computing power to maintain" and were "less efficient."[20]

68.    After rejecting conventional approaches to the problem, Meta ended up using SitNet's situational network technology, describing their solution as follows:

The high-level overview of the process is as follows:

When a crisis is activated, we instantly run a small piece of code, or "hook," that executes after every News Feed load.

Once someone in the affected area of the crisis (Person A) loads his or her News Feed, we immediately invite that person to mark himself or herself safe with a feed prompt and a notification.

Now that we have prompted Person A, we know it's fairly likely that he or she is friends with others in the affected area (because friendships are often geographically based). We want to find these people and invite them, but doing that all in the context of a single web request would be too resource intensive. Instead,

---

[19] Exhibit 26, https://engineering.fb.com/2016/06/02/web/safety-check-streamlining-deployment-around-the-world/ (retrieved July 18, 2023).
[20] Exhibit 26, https://engineering.fb.com/2016/06/02/web/safety-check-streamlining-deployment-around-the-world/ (retrieved July 18, 2023).

we schedule a job in our generalized worker pool of machines, called the "async tier," to asynchronously iterate through all of Person A's friends.

When we find a friend in the area during this check (Person B), we send Person B a push notification that invites him or her to Safety Check. We then recursively schedule the same job on Person B to check on Person B's friends. This gives us a parallel and distributed version of breadth-first search across the social graph, where we continue iterating as long as the current person being examined is in the affected area.

Since we remember which people have been invited, we don't perform recursive searches if we revisit those profiles. In practice we can exhaust a small graph of ~100,000 people in just minutes, with larger areas of millions of people taking only 10 to 15 minutes at full capacity. [21]

69.     The unconventional process used by Meta for Facebook's Safety Check feature involves the creation of a situational network.

70.     Meta's own documentation admits that conventional networking architectures are less efficient, more computationally intensive, and more storage intensive than using SitNet's patented situational network architecture.   Therefore, SitNet's patented situational network technology represents an improvement to the computer and computer network technology itself and is patent eligible.

## III.    META'S INFRINGEMENT

*Facebook Crisis Response / Safety Check Infringes the Patents-in-Suit*

71.     Meta's Facebook product, including its implementation of the Crisis Response feature (hereinafter "Facebook Crisis Response"), infringes the Patents-in-Suit because it practices the claimed inventions, including by using the inventive situational network technology.[22]

---

[21] Exhibit 26, https://engineering.fb.com/2016/06/02/web/safety-check-streamlining-deployment-around-the-world/ (retrieved July 18, 2023).

[22] Exhibit 27, https://www.facebook.com/help/141874516227713 (retrieved July 18, 2023).

72.     Facebook Crisis Response is automatically activated in response to a situation, establishes a situational network, connects users to a situational network, and allows the users to communicate via the situational network, including to offer or request help.[23]

73.     When Facebook receives notice from a global crisis reporting agency that an incident occurs and there are many people in the vicinity of the incident, Facebook Crisis Response, a feature of Meta's Facebook product, is activated.[24]

74.     For example, Facebook Crisis Response establishes a situational network when "an incident such as an earthquake, hurricane, mass shooting or building collapse occurs where people might be in danger."[25]

75.     Facebook connects users to the situational network that was established in response to the incident or situation: "Safety Check will be activated when people in the affected area post about the incident.  Once Safety Check is activated, people in the area may receive a notification from Facebook to mark themselves safe. People who click the Safety Check notification will also be able to see if any of their friends are in the affected area or have marked themselves safe."[26]

76.     Facebook Crisis Response uses location information and other information in establishing a situational network and allows connected users to communicate about the situation with other users that are part of the situational network: "We look at a number of factors to determine if you're in an affected area. These may include: The city you've listed in your profile. Your current location, if you've given Facebook access to your phone or tablet's location. Other signals that point to your location (example: the city where you use the Internet). If a lot of people

---

[23] Exhibit 27, https://www.facebook.com/help/141874516227713 (retrieved July 18, 2023).
[24] Exhibit 28, https://www.facebook.com/help/1761941604022087 (retrieved July 18, 2023).
[25] Exhibit 28, https://www.facebook.com/help/1761941604022087 (retrieved July 18, 2023).
[26] Exhibit 28, https://www.facebook.com/help/1761941604022087 (retrieved July 18, 2023).

in your area are talking about an incident, you may be invited to mark yourself safe using Safety Check. If you're not in the affected area or you don't want to share, you can click Doesn't Apply To Me."[27]

77.    In some instances, Facebook Crisis Response will send a notification requesting the individual mark themselves as safe to the devices of individuals who are nearby the situation (*e.g.,* via Android, iOS, other feature phones, or desktop[28]). In this way, Facebook creates a database of individuals who are marked as "safe," which can be accessed from a Facebook Crisis Response page.

78.    After establishing a situational network, Facebook Crisis Response connects users that were previously not connected to the situational network.

79.    Users connected to the situational network can communicate via the situational network: "What are some things I can do to stay safe on Facebook when requesting and offering help in Crisis Response? … Before messaging someone through Crisis Response, look to see if you and the person have mutual friends on Facebook. If you do share any mutual friends, you can then check in with your friend before meeting someone you don't know personally."[29]

80.    Individuals may, via the Facebook Crisis Response page, "request or offer help, see if their friends are marked safe, get updates and more."[30]

---

[27] Exhibit 29, https://www.facebook.com/help/778112215545209 (retrieved July 18, 2023).
[28] Exhibit 18, https://about.fb.com/news/2014/10/introducing-safety-check/ (retrieved July 18, 2023).
[29] Exhibit 30, https://www.facebook.com/help/1406473979385011 (retrieved July 18, 2023).
[30] Exhibit 35, https://www.facebook.com/crisisresponse/178160644571736/friends (retrieved July 21, 2023).

81.    Facebook Crisis Response has been activated in this District numerous times.  For example, Facebook Crisis Response was activated after an explosion on September 17, 2016, that caused 25 injuries.[31]



82.    In addition, Facebook Crisis Response was activated in this District after a motorist drove on a Lower Manhattan bike path on October 31, 2017.[32]

83.    Therefore, as set forth in the previously discussed documentation, Facebook Crisis Response documentation demonstrates that Facebook Crisis Response infringes the Patents-in-Suit.

*Facebook Ad Platform Infringes the Patents-in-Suit*

---

[31]  Exhibit 31,  https://www.fastcompany.com/4019400/facebook-activates-safety-check-for-nyc-explosion (retrieved July 18, 2023).

[32]  Exhibit 32,  https://time.com/5004510/facebook-safety-check-new-york/  (retrieved  July  18, 2023).

84.     Meta's Facebook product, including its implementation of the Facebook Ad Platform/Meta Marketing API (hereinafter the "Facebook Ad Platform"), infringes the Patents-in-Suit because it practices the claimed inventions by using the inventive situational network technology.  As explained in Facebook Ad Platform documentation, targeted advertising includes the steps of creating a campaign, defining targeting, creating a plurality of ads, and scheduling delivery of the ads.[33]  After a user follows the steps and the advertising is activated, Facebook establishes a situational network and automatically connects the devices of various individuals to the situational network.[34]

85.     In order to establish the situational network, Facebook Ad Platform includes Personalization Algorithms, Lookalike Audiences, Custom Audiences, Dynamic Audiences and other Targeting Options.[35]

*Meta's Software Architecture Confirms Infringement of the Patents-in-Suit*

86.     In additional to documenting its products, Meta has published documentation of its overall software architecture that, upon information and belief, is used to implement Facebook Crisis Response and Ad Platform.[36]

---

[33] Exhibit 24, https://developers.facebook.com/docs/marketing-apis/get-started (retrieved July 18, 2023).

[34] Exhibit 25, https://developers.facebook.com/docs/marketing-apis/audiences (retrieved July 18, 2023).

[35] Exhibit 25, https://developers.facebook.com/docs/marketing-api/audiences (retrieved July 18, 2023).

[36] Exhibit 33, TAO: Facebook's Distributed Data Store for the Social Graph, available at https://research.facebook.com/publications/tao-facebooks-distributed-data-store-for-the-social-graph/ (retrieved July 18, 2023).

87.    This documentation of Meta's software architecture also demonstrates that Facebook Crisis Response and Facebook Ad Platform infringe the patented situational network technology[37].

88.    Based on Meta's own publication — "TAO: Facebook's Distributed Data Store for the Social Graph" [38] — Meta relies on TAO,[39] short for The Associations and Objects, to access the underlying databases that store both the nodes and connections (edges) between the nodes.

89.    Accordingly, through the use of these technologies, a network will be established as the result of a query of the underlying social graph in response to a situation.

90.    That is, a network will not actually come into being until the underlying databases are queried and the results of the queries combined.

91.    This situational network is therefore created via Meta's Tao Application Programming Interface ("API"), which is utilized by Meta's Pixel and Conversion APIs (collectively, "Meta's Marketing API") to create targeted ads.

92.    Meta's Marketing API is built on top of Facebook's Graph API, which "is named after the idea of a 'social graph' — a representation of the information on Facebook." The 'social graph' is "composed of nodes, edges, and fields."[40]

_____

[37] Exhibit 33, TAO: Facebook's Distributed Data Store for the Social Graph, available at https://research.facebook.com/publications/tao-facebooks-distributed-data-store-for-the-social-graph/ (retrieved July 18, 2023).

[38] Exhibit 33, TAO: Facebook's Distributed Data Store for the Social Graph, available at https://research.facebook.com/publications/tao-facebooks-distributed-data-store-for-the-social-graph/ (retrieved July 18, 2023).

[39] Exhibit 34, The Tao of Facebook: 'Social Graph' Takes New Path, *Wired Magazine, June 25, 2013*, available at https://www.wired.com/2013/06/facebook-tao (retrieved July 18, 2023).

[40] Exhibit 36, https://developers.facebook.com/docs/graph-api/overview (retrieved July 18, 2023).

93.     One of the nodes within the 'social graph' is a user node, which collects information without direct input from a user to create a user profile, such as demographic information etc., and may be hosted on a remote server.

94.     The Patents-in-Suit detail the same for a situational network built on multi-dimensional personal information network framework.

95.     Event nodes are present within the Facebook "social graph" and are hosted by Meta's server.

96.     Event nodes are also encompassed within ad campaign nodes.[41]

97.     Currently, there are six (6) ads manager campaign objective choices: Awareness, Traffic, Engagement, Leads, App Promotion, and Sales, which correlate with an event or situation.[42]

98.     Meta's own documentation provides examples of how Ad Campaign "objectives" correspond to situations and events.[43]

99.     The Ad Campaign node, which includes ad sets[44] and attributes for a target audience[45], indicates Meta's server is configured to receive a plurality of advertisements from at least one advertising entity as to create ad sets from a collection of ads and ad campaigns which form a collection of ad sets.

---

[41] Exhibit 37, https://developers.facebook.com/docs/marketing-api/campaign-structure (retrieved July 18, 2023).

[42] Exhibit 38, https://www.facebook.com/business/help/1438417719786914 (retrieved July 18, 2023).

[43] Exhibit 38, https://www.facebook.com/business/help/1438417719786914 (retrieved July 18, 2023).

[44] Exhibit 39, https://developers.facebook.com/docs/marketing-api/reference/v16.0 (retrieved July 18, 2023).

[45] Exhibit 24, https://developers.facebook.com/docs/marketing-apis/get-started (retrieved July 18, 2023).

100.    Meta's server is configured to obtain an indication of an occurrence of a situation through setting the status of an ad campaign and/or the object (*i.e.*, ad sets and ad) below it, because Ad Campaign objectives correspond to situations and events.

101.    The very creation of an active ad dampaign demonstrates Meta's servers are configured to obtain an indication of an occurrence of a situation.

102.    Ad Campaign may be created with a "paused" status, which would not give an indication of an occurrence of a situation.  This can be changed, according to Meta's documentation.[46]

103.    By being configured to permit changing the status of an ad campaign to "active," Meta's server is configured to obtain an indication of an occurrence of a situation.

104.    The "targeting" attribute of an ad set, specifies the individuals to add to the situational network established in response to the situation corresponding to the "objective" and the ad campaign including the ad set, specifying who may see the ads.

105.    Meta distributes a family of products that allow ads within an ad campaign to be shown.  These products include Facebook, Instagram, Messenger and WhatsApp, with each one being user specific.[47]

106.    As such, when these products are downloaded and installed on a plurality of devices, each device: a) corresponds to an individual connected to the situational network, b) becomes configured to connect to the central server, c) receives at least one of the advertisements

---

[46]  Exhibit  40,  https://developers.facebook.com/docs/marketing-apis/guides/manage-your-ad-object-status (retrieved July 18, 2023).
[47]  Exhibit 41, https://developers.facebook.com/docs/marketing-apis (retrieved July 18, 2023).

based on the affiliation of the respective individual to the situation and d) are linked to the Internet and e) have been granted permissions to receive data from the internet.

107.    Meta's server is configured to automatically connect devices to the situational network established in response to the situation.

108.    The ads that are within an ad set of an ad campaign will contain information related to the situation corresponding to the "objective" of the ad campaign.

109.    Otherwise, the ad would not elicit the desired action of visiting a new store or website, signing up for newsletter, attending an event, purchasing a newly available product, etc.

110.    Individuals that share attributes, such as certain demographic information, contained in the individual's user profile, are grouped together to create Lookalike Audiences.[48]

111.    Meta then uses these lookalike audiences to generate relevant advertisements that would allow for individual engagement.

112.    Thus, Meta's software architecture further demonstrates that Facebook, through its implementation and utilization of Facebook Crisis Response and Facebook Ad Platform, infringes the Patents-in-Suit.

## COUNT I

### Infringement of the '290 Patent

113.    SitNet repeats and realleges all preceding paragraphs, as if fully set forth herein.

114.    SitNet has not licensed or otherwise authorized Meta to make, use, offer for sale, sell, or import any products that embody the inventions of the '290 Patent.

---

[48] Exhibit 42, https://developers.facebook.com/docs/marketing-api/audiences/guides/lookalike-audiences#custom-audience (retrieved July 18, 2023).

115.    Meta infringes at least claims 1, 3-5, 8 and 10-12 of the '290 Patent in violation of 35 U.S.C. § 271 at least with respect to at least Facebook Crisis Response.

116.    SitNet contends each limitation is met literally, and, to the extent a limitation is not met literally, it is met under the doctrine of equivalents.

117.    For example, Meta directly infringes at least claim 1 of the '290 Patent by making, using (*e.g.*, performing/executing), selling, and/or offering to sell within the United States, Facebook that includes Facebook Crisis Response.

118.    A claim chart explaining in detail the manner in which Meta's Facebook Crisis Response infringes at least claims 1, 3-5, 8 and 10-12 of the '290 Patent is attached as    and incorporated by reference.

119.    Claim 1 of the '290 Patent is shown below:

| Element | Claim 1 of U.S. Patent No. 10,117,290 |
|---|---|
| Preamble | A network system for accessing situation related information, the system comprising: |
| Element 1A | a network connection for receiving an indication of an occurrence of a situation; |
| Element 1B | a situational network formed based on the occurrence of the situation, the situational network including a plurality of participant devices determined to be geographically proximate to the situation, each of the participant devices corresponding to a participant in the situational network; |
| Element 1C | a second network connection for presenting a roll call query to each of the plurality of participant devices soliciting a reply related to a status of the participant; |
| Element 1D | a plurality of network connections established for receiving a status response from the participant devices; and |
| Element 1E | a database for aggregating the status responses from responsive participants into a roll call list. |

120.    Meta's Facebook Crisis Response includes "a network system for accessing situation related information" as required by the Preamble of Claim 1 of the '290 Patent, for example, as shown in Exhibit 7 at p. 1.

121.    Meta's Facebook Crisis Response includes "a network connection for receiving an indication of an occurrence of a situation" as required by Element 1A of Claim 1 of the '290 Patent, for example, as shown in Exhibit 7 at p. 2.

122.    Meta's Facebook Crisis Response includes "a situational network formed based on the occurrence of the situation, the situational network including a plurality of participant devices determined to be geographically proximate to the situation, each of the participant devices corresponding to a participant in the situational network" as required by Element 1B of Claim 1 of the '290 Patent, for example, as shown in Exhibit 7 at pp. 2-4.

123.    Meta's Facebook Crisis Response includes "a second network connection for presenting a roll call query to each of the plurality of participant devices soliciting a reply related to a status of the participant" as required by Element 1C of Claim 1 of the '290 Patent, for example, as shown in Exhibit 7 at pp. 4-5.

124.    Meta's Facebook Crisis Response includes "a plurality of network connections established for receiving a status response from the participant devices" as required by Element 1D of Claim 1 of the '290 Patent, for example, as shown in Exhibit 7 at pp. 5-6.

125.    Meta's Facebook Crisis Response includes "a database for aggregating the status responses from responsive participants into a roll call list" as required by Element 1E of Claim 1 of the '290 Patent, for example, as shown in Exhibit 7 at pp. 6-7.

126.    Meta's Facebook Crisis Response embodies every element of Claim 1 of the '290 Patent, literally or under the doctrine of equivalents.

127.    On information and belief, Meta has been an active inducer of infringement of the '290 Patent under 35 U.S.C. § 271(b), because Meta aided, instructed, or otherwise acted with the intent to cause acts by its customers and/or users of Facebook Crisis Response that would constitute direct infringement of the patent, including by instructing the users how to use Facebook Crisis Response features via user devices, Meta knew of the patent or showed willful blindness to the existence of the patent, and Meta's customers and/or users thereby directly infringed at least claim 1 of the '290 Patent.

128.    On information and belief, Meta has been a contributory infringer of the '290 Patent under 35 U.S.C. § 271(b), because Meta's customers and/or users have directly infringed at least claim 1 of the '290 Patent, Meta sold, offered for sale, or imported within the United States a component of Facebook Crisis Response for use in the infringing systems and methods, Facebook Crisis Response is not a staple article or commodity of commerce capable of substantial non-infringing use at least because Facebook Crisis Response must be used with a user device, Facebook Crisis Response constitutes a material part of the claimed invention, Meta knew that the component was especially made or adapted for use as an infringement of one or more claims of the '290 Patent, and Meta's customers and/or users use Facebook Crisis Response in combination with user devices to directly infringe one or more claims of the '290 Patent.

129.    SitNet has been injured and seeks damages to adequately compensate it for Meta's infringement of the '290 Patent.  Such damages should be no less than a reasonable royalty under 35 U.S.C. § 284.

130.    Upon information and belief, Meta will continue to infringe the '290 Patent unless permanently enjoined by this Court.  Pursuant to 35 U.S.C. § 283, SitNet is entitled to a permanent injunction against further infringement of the '290 Patent by Meta.

## COUNT II

### Infringement of the '769 Patent

131.    SitNet repeats and realleges all preceding paragraphs, as if fully set forth herein.

132.    SitNet has not licensed or otherwise authorized Meta to make, use, offer for sale, sell, or import any products that embody the inventions of the '769 Patent.

133.    Meta infringes at least claims 1-4, 6-13 and 15-20 of the '769 Patent in violation of 35 U.S.C. § 271 at least with respect to at least Facebook Ad Platform.

134.    SitNet contends each limitation is met literally, and, to the extent a limitation is not met literally, it is met under the doctrine of equivalents.

135.    For example, Meta directly infringes at least claim 1 of the '769 Patent by making, using (*e.g.*, performing/executing), selling, and/or offering to sell within the United States, Facebook that includes Facebook Ad Platform.

136.    A claim chart explaining in detail the manner in which Meta's Facebook Ad Platform infringes at least claims 1-4, 6-13 and 15-20 of the '769 Patent is attached as Exhibit 8 and incorporated by reference.

137.    Claim 1 of the '769 Patent is shown below:

| Element | Claim 1 of U.S. Patent No. 12,120,769 |
|---|---|
| Preamble | A computer-implemented method comprising: |
| Element 1A | maintaining, by a networking server configured to maintain data defining a multidimensional information network, a database of a plurality of user nodes and multi-dimensional node-to-node links characterizing relationships between the plurality of user nodes via dimensions in the multi-dimensional information network, wherein at least some of the user nodes of the plurality of user nodes are respectively associated with user data; |
| Element 1B | providing, by the networking server, respective user devices associated with respective user nodes of the plurality of user nodes, respective composite data |

| Element | Claim 1 of U.S. Patent No. 12,120,769 |
|---|---|
| | feeds that are based on the database of the plurality of user nodes and multi-dimensional node-to-node links; |
| Element 1C | establishing, by an event node server, an event node associated with an event in a particular<br><br>geographical area, wherein the event node is discoverable to each respective user device of a first<br><br>subset of a plurality of user devices by browsing a respective composite data feed; |
| Element 1D | joining the first subset of the plurality of user devices that have discovered the event node to the event node, wherein user devices of the first subset of the plurality of user devices are respectively associated with a first subset of user nodes of the multi-dimensional information network that are joined to a centralized architecture for the event node, wherein the event node is configured as a central node in the centralized architecture for accessing information associated with the event from a location in the multi-dimensional information network; |
| Element 1E | creating, by the networking server, based on the database of the plurality of user nodes and multi-dimensional node-to-node links, a projection of the plurality of user nodes, wherein the projection represents a second subset of user devices , wherein the second subset of user devices is selected based on respective distances of devices of the second subset of user devices from the event; |
| Element 1F | transmitting, by the networking server, respective requests to connect to the event node to the second subset of user devices, wherein the respective requests to connect are in forms of roll calls; |
| Element 1G | recording respective responses to the respective requests to connect; |
| Element 1H | making a subset of the respective responses viewable, via the event node, to a first device, associated with a first node, that is connected to the event node, wherein each response of the subset was received from a device associated with a node having a single degree of separation from the first node in the database of the plurality of user nodes and multi-dimensional node-to-node links; |
| Element 1I | analyzing (a) the database of the plurality of user nodes and multi-dimensional node-to-node links, and (b) data of user nodes of the multi-dimensional information network that are joined to the centralized architecture for the event node to identify at least one second node included in the database of the |

| Element | Claim 1 of U.S. Patent No. 12,120,769 |
|---|---|
|  | plurality of user nodes and multi-dimensional node-to-node links that is: (a) not connected to the event node, and (b) connected via at least one dimension to at least one user node of the multi-dimensional information network that is joined to the centralized architecture for the event node; and |
| Element 1J | delivering information to the at least one second node, wherein the information was received from an information node configured to store and provide supplemental information via the multidimensional information network. |

138.    Meta's Facebook Ad Platform includes "a computer-implemented method" as required by the Preamble of Claim 1 of the '769 Patent, for example, as shown in Exhibit 8 at pp. 1-2.

139.    Meta's Facebook Ad Platform includes "maintaining, by a networking server configured to maintain data defining a multidimensional information network, a database of a plurality of user nodes and multi-dimensional node-to-node links characterizing relationships between the plurality of user nodes via dimensions in the multi-dimensional information network, wherein at least some of the user nodes of the plurality of user nodes are respectively associated with user data" as required by Element 1A of Claim 1 of the '769 Patent, for example, as shown in Exhibit 8 at pp. 2-3.

140.    Meta's Facebook Ad Platform includes "providing, by the networking server, respective user devices associated with respective user nodes of the plurality of user nodes, respective composite data feeds that are based on the database of the plurality of user nodes and multi-dimensional node-to-node links" as required by Element 1B of Claim 1 of the '769 Patent, for example, as shown in Exhibit 8 at p. 4.

141.    Meta's Facebook Ad Platform includes "establishing, by an event node server, an event node associated with an event in a particular geographical area, wherein the event node is discoverable to each respective user device of a first subset of a plurality of user devices by

browsing a respective composite data feed" as required by Element 1C of Claim 1 of the '769 Patent, for example, as shown in Exhibit 8 at pp. 5-6.

142.    Meta's Facebook Ad Platform includes "joining the first subset of the plurality of user devices that have discovered the event node to the event node, wherein user devices of the first subset of the plurality of user devices are respectively associated with a first subset of user nodes of the multi-dimensional information network that are joined to a centralized architecture for the event node, wherein the event node is configured as a central node in the centralized architecture for accessing information associated with the event from a location in the multi-dimensional information network" as required by Element 1D of Claim 1 of the '769 Patent, for example, as shown in Exhibit 8 at pp. 7-9.

143.    Meta's Facebook Ad Platform includes "creating, by the networking server, based on the database of the plurality of user nodes and multi-dimensional node-to-node links, a projection of the plurality of user nodes, wherein the projection represents a second subset of user devices , wherein the second subset of user devices is selected based on respective distances of devices of the second subset of user devices from the event" as required by Element 1E of Claim 1 of the '769 Patent, for example, as shown in Exhibit 8 at pp. 9-11.

144.    Meta's Facebook Ad Platform includes "transmitting, by the networking server, respective requests to connect to the event node to the second subset of user devices, wherein the respective requests to connect are in forms of roll calls" as required by Element 1F of Claim 1 of the '769 Patent, for example, as shown in Exhibit 8 at pp. 1-13.

145.    Meta's Facebook Ad Platform includes "recording respective responses to the respective requests to connect" as required by Element 1G of Claim 1 of the '769 Patent, for example, as shown in Exhibit 8 at pp. 13-14.

146.    Meta's Facebook Ad Platform includes "making a subset of the respective responses viewable, via the event node, to a first device, associated with a first node, that is connected to the event node, wherein each response of the subset was received from a device associated with a node having a single degree of separation from the first node in the database of the plurality of user nodes and multi-dimensional node-to-node links" as required by Element 1H of Claim 1 of the '769 Patent, for example, as shown in Exhibit 8 at pp. 14-16.

147.    Meta's Facebook Ad Platform includes "analyzing (a) the database of the plurality of user nodes and multi-dimensional node-to-node links, and (b) data of user nodes of the multi-dimensional information network that are joined to the centralized architecture for the event node to identify at least one second node included in the database of the plurality of user nodes and multi-dimensional node-to-node links that is: (a) not connected to the event node, and (b) connected via at least one dimension to at least one user node of the multi-dimensional information network that is joined to the centralized architecture for the event node" as required by Element 1I of Claim 1 of the '769 Patent, for example, as shown in Exhibit 8 at pp. 16-18.

148.    Meta's Facebook Ad Platform includes "delivering information to the at least one second node, wherein the information was received from an information node configured to store and provide supplemental information via the multidimensional information network" as required by Element 1J of Claim 1 of the '769 Patent, for example, as shown in Exhibit 8 at pp. 18-20.

149.    Meta's Facebook Ad Platform embodies every element of Claim 1 of the '769 Patent, literally or under the doctrine of equivalents.

150.    On information and belief, Meta has been an active inducer of infringement of the '769 Patent under 35 U.S.C. § 271(b), because Meta aided, instructed, or otherwise acted with the intent to cause acts by its customers and/or users of Facebook Ad Platform that would constitute

direct infringement of the patent, including by instructing the users how to use Facebook Ad Platform via user devices, Meta knew of the patent or showed willful blindness to the existence of the patent, and Meta's customers and/or users thereby directly infringed at least claim 1 of the '769 Patent.

151.    On information and belief, Meta has been a contributory infringer of the '769 Patent under 35 U.S.C. § 271(b), because Meta's customers and/or users have directly infringed at least claim 1 of the '769 Patent, Meta sold, offered for sale, or imported within the United States a component of Facebook Ad Platform for use in the infringing systems and methods, Facebook Ad Platform is not a staple article or commodity of commerce capable of substantial non-infringing use at least because Facebook Ad Platform must be used with a user device, Facebook Ad Platform constitutes a material part of the claimed invention, Meta knew that the component was especially made or adapted for use as an infringement of one or more claims of the '769 Patent, and Meta's customers and/or users use Facebook Ad Platform in combination with user devices to directly infringe one or more claims of the '769 Patent.

152.    SitNet has been injured and seeks damages to adequately compensate it for Meta's infringement of the '769 Patent.  Such damages should be no less than a reasonable royalty under 35 U.S.C. § 284.

153.    Upon information and belief, Meta will continue to infringe the '769 Patent unless permanently enjoined by this Court.  Pursuant to 35 U.S.C. § 283, SitNet is entitled to a permanent injunction against further infringement of the '769 Patent by Meta.

### COUNT III

### Infringement of the '815 Patent

154.    SitNet repeats and realleges all preceding paragraphs, as if fully set forth herein.

155.    SitNet has not licensed or otherwise authorized Meta to make, use, offer for sale, sell, or import any products that embody the inventions of the '815 Patent.

156.    Meta infringes at least claims 1-22 and 25-27 of the '815 Patent in violation of 35 U.S.C. § 271 at least with respect to Facebook Ad Platform.

157.    SitNet contends each limitation is met literally, and, to the extent a limitation is not met literally, it is met under the doctrine of equivalents.

158.    For example, Meta directly infringes at least claim 1 of the '815 Patent by making, using (*e.g.*, performing/executing), selling, and/or offering to sell within the United States, Facebook that includes Facebook Ad Platform.

159.    A claim chart explaining in further detail the manner in which Meta's Facebook Ad Platform infringes at least claims 1-22 and 25-27 of the '815 Patent is attached as Exhibit 9 and incorporated by reference.

160.    Claim 1 of the '815 Patent is shown below:

| Element | Claim 1 of U.S. Patent No. 12,238,815 |
|---|---|
| **Preamble** | A method for delivering event information via a network using a networked system, the networked system comprising: |
| **Element 1A** | at least one networking server configured to maintain data defining a multi-dimensional information network, wherein each respective user node of the multi-dimensional information network is associated with respective user data; |
| **Element 1B** | a plurality of user devices configured to be connected with the at least one networking server via the network, wherein each of the plurality of user devices of the plurality of user devices is associated with a respective user node; |
| **Element 1C** | and at least one information node for storing and providing supplemental information via the network; |
| **Element 1D** | the method comprising: maintaining, by the at least one networking server, a database of a plurality of user nodes and multi-dimensional node-to-node links characterizing |

| Element | Claim 1 of U.S. Patent No. 12,238,815 |
|---|---|
|  | relationships between the plurality of user nodes via dimensions in the multi-dimensional information network; |
| Element 1E | providing, by the at least one networking server, to each respective user device associated with a respective user node of the plurality of user nodes a respective composite data feed that is based on a database of multi-dimensional node-to-node links; |
| Element 1F | establishing, by at least one event node server, an event node associated with an event in a particular geographical area, |
| Element 1G | wherein the event node is discoverable to each respective user device of a first subset of the plurality of user devices by browsing the respective composite data feed; |
| Element 1H | joining at least the first subset of the plurality of user devices that have discovered the event node to the event node, wherein user devices associated with a first subset of user nodes of the multi-dimensional information network are joined to a centralized architecture for the event node; |
| Element 1I | wherein the event node is configured as a central node in the centralized architecture for accessing information associated with the event from at least one location in the multi-dimensional information network; |
| Element 1J | creating, by the at least one networking server, based on the database of multidimensional node-to-node links, a projection of the plurality of user nodes wherein the projection of the plurality of user nodes represents a second subset of user devices, wherein the second subset of user devices is selected based on respective distances of devices of the second subset of user devices from the event; |
| Element 1K | transmitting, by the at least one networking server, respective requests to connect to the event node to the second subset of user devices, wherein each respective request to connect is in a form of a roll call; |
| Element 1L | recording respective responses to the respective requests to connect to the event node; |
| Element 1M | making a subset of the respective responses viewable, via the event node, to a first device, associated with a first node, that is connected to the event node, wherein: |

| Element | Claim 1 of U.S. Patent No. 12,238,815 |
|---|---|
| **Element 1N** | each response of the subset was received from a device associated with a node having a single degree of separation from the first node in the database of multi-dimensional node-to-node links; and |
| **Element 1O** | analyzing (a) the database of multi-dimensional node-to-node links, and (b) data of user nodes of the multi-dimensional information network that are joined to the centralized architecture for the event node to: |
| **Element 1P** | identify at least one second node included in the database of multidimensional node-to-node links that is: (a) not connected to the event node, and (b) connected via at least one dimension to at least one user node of the multi-dimensional information network that is joined to the centralized architecture for the event node; and |
| **Element 1Q** | delivering information to the at least one second node, wherein the information was received from the at least one information node. |

161.    Meta's Facebook Ad Platform includes "a method for delivering event information via a network using a networked system" as required by the Preamble of Claim 1 of the '815 Patent, for example, as shown in Exhibit 9 at pp. 1-3.

162.    Meta's Facebook Ad Platform includes "at least one networking server configured to maintain data defining a multi-dimensional information network, wherein each respective user node of the multi-dimensional information network is associated with respective user data" as required by Element 1A of Claim 1 of the '815 Patent, for example, as shown in Exhibit 9 at pp. 3-6.

163.    Meta's Facebook Ad Platform includes "a plurality of user devices configured to be connected with the at least one networking server via the network, wherein each of the plurality of user devices of the plurality of user devices is associated with a respective user node" as required by Element 1B of Claim 1 of the '815 Patent, for example, as shown in Exhibit 9 at p. 7.

164.    Meta's Facebook Ad Platform includes "and at least one information node for storing and providing supplemental information via the network" as required by Element 1C of Claim 1 of the '815 Patent, for example, as shown in Exhibit 9 at pp. 8-9.

165.    Meta's Facebook Ad Platform includes "maintaining, by the at least one networking server, a database of a plurality of user nodes and multi-dimensional node-to-node links characterizing relationships between the plurality of user nodes via dimensions in the multi-dimensional information network" as required by Element 1D of Claim 1 of the '815 Patent, for example, as shown in Exhibit 9 at pp. 9-10.

166.    Meta's Facebook Ad Platform includes "providing, by the at least one networking server, to each respective user device associated with a respective user node of the plurality of user nodes a respective composite data feed that is based on a database of multi-dimensional node-to-node links" as required by Element 1E of Claim 1 of the '815 Patent, for example, as shown in Exhibit 9 at p. 11.

167.    Meta's Facebook Ad Platform includes "establishing, by at least one event node server, an event node associated with an event in a particular geographical area" as required by Element 1F of Claim 1 of the '815 Patent, for example, as shown in Exhibit 9 at pp. 11-13.

168.    Meta's Facebook Ad Platform includes "wherein the event node is discoverable to each respective user device of a first subset of the plurality of user devices by browsing the respective composite data feed" as required by Element 1G of Claim 1 of the '815 Patent, for example, as shown in Exhibit 9 at pp. 11-13.

169.    Meta's Facebook Ad Platform includes "joining at least the first subset of the plurality of user devices that have discovered the event node to the event node, wherein user devices associated with a first subset of user nodes of the multi-dimensional information network

42

are joined to a centralized architecture for the event node" as required by Element 1H of Claim 1 of the '815 Patent, for example, as shown in Exhibit 9 at pp. 14-16.

170.    Meta's Facebook Ad Platform includes "wherein the event node is configured as a central node in the centralized architecture for accessing information associated with the event from at least one location in the multi-dimensional information network" as required by Element 1I of Claim 1 of the '815 Patent, for example, as shown in Exhibit 9 at pp. 14-16.

171.    Meta's Facebook Ad Platform includes "creating, by the at least one networking server, based on the database of multidimensional node-to-node links, a projection of the plurality of user nodes wherein the projection of the plurality of user nodes represents a second subset of user devices, wherein the second subset of user devices is selected based on respective distances of devices of the second subset of user devices from the event" as required by Element 1J of Claim 1 of the '815 Patent, for example, as shown in Exhibit 9 at pp. 16-19.

172.    Meta's Facebook Ad Platform includes "transmitting, by the at least one networking server, respective requests to connect to the event node to the second subset of user devices, wherein each respective request to connect is in a form of a roll call" as required by Element 1K of Claim 1 of the '815 Patent, for example, as shown in Exhibit 9 at pp. 19-21.

173.    Meta's Facebook Ad Platform includes "recording respective responses to the respective requests to connect to the event node" as required by Element 1L of Claim 1 of the '815 Patent, for example, as shown in Exhibit 9 at pp. 21-22.

174.    Meta's Facebook Ad Platform includes "making a subset of the respective responses viewable, via the event node, to a first device, associated with a first node, that is connected to the event node" as required by Element 1M of Claim 1 of the '815 Patent, for example, as shown in Exhibit 9 at pp. 22-24.

43

175.    Meta's Facebook Ad Platform includes "each response of the subset was received from a device associated with a node having a single degree of separation from the first node in the database of multi-dimensional node-to-node links" as required by Element 1N of Claim 1 of the '815 Patent, for example, as shown in Exhibit 9 at pp. 22-24.

176.    Meta's Facebook Ad Platform includes "analyzing (a) the database of multi-dimensional node-to-node links, and (b) data of user nodes of the multi-dimensional information network that are joined to the centralized architecture for the event node" as required by Element 1O of Claim 1 of the '815 Patent, for example, as shown in Exhibit 9 at pp. 24-26.

177.    Meta's Facebook Ad Platform includes "identify at least one second node included in the database of multidimensional node-to-node links that is: (a) not connected to the event node, and (b) connected via at least one dimension to at least one user node of the multi-dimensional information network that is joined to the centralized architecture for the event node" as required by Element 1P of Claim 1 of the '815 Patent, for example, as shown in Exhibit 9 at pp. 24-26.

178.    Meta's Facebook Ad Platform includes "delivering information to the at least one second node, wherein the information was received from the at least one information node" as required by Element 1Q of Claim 1 of the '815 Patent, for example, as shown in Exhibit 9 at pp. 27-28.

179.    Meta's Facebook Ad Platform embodies every element of Claim 1 of the '815 Patent, literally or under the doctrine of equivalents.

180.    On information and belief, Meta has been an active inducer of infringement of the '815 Patent under 35 U.S.C. § 271(b), because Meta aided, instructed, or otherwise acted with the intent to cause acts by its customers and/or users of Facebook Ad Platform that would constitute direct infringement of the patent, including by instructing the users how to use Facebook Ad

Platform features via user devices, Meta knew of the patent or showed willful blindness to the existence of the patent, and Meta's customers and/or users thereby directly infringed at least claim 1 of the '815 Patent.

181.    On information and belief, Meta has been a contributory infringer of the '815 Patent under 35 U.S.C. § 271(b), because Meta's customers and/or users have directly infringed at least claim 1 of the '815 Patent, Meta sold, offered for sale, or imported within the United States a component of Facebook Ad Platform for use in the infringing systems and methods, Facebook Ad Platform is not a staple article or commodity of commerce capable of substantial non-infringing use at least because Facebook Ad Platform must be used with a user device, Facebook Ad Platform constitutes a material part of the claimed invention, Meta knew that the component was especially made or adapted for use as an infringement of one or more claims of the '815 Patent, and Meta's customers and/or users use Facebook Ad Platform in combination with user devices to directly infringe one or more claims of the '815 Patent.

182.    SitNet has been injured and seeks damages to adequately compensate it for Meta's infringement of the '815 Patent.  Such damages should be no less than a reasonable royalty under 35 U.S.C. § 284.

183.    Upon information and belief, Meta will continue to infringe the '815 Patent unless permanently enjoined by this Court.  Pursuant to 35 U.S.C. § 283, SitNet is entitled to a permanent injunction against further infringement of the '815 Patent by Meta.

## COUNT IV

### Infringement of the '325 Patent

184.    SitNet repeats and realleges all preceding paragraphs, as if fully set forth herein.

185. SitNet has not licensed or otherwise authorized Meta to make, use, offer for sale, sell, or import any products that embody the inventions of the '325 Patent.

186. Meta infringes at least claims 1-18 of the '325 Patent in violation of 35 U.S.C. § 271 at least with respect to at least Facebook Ad Platform.

187. SitNet contends each limitation is met literally, and, to the extent a limitation is not met literally, it is met under the doctrine of equivalents.

188. For example, Meta directly infringes at least claim 1 of the '325 Patent by making, using (*e.g.*, performing/executing), selling, and/or offering to sell within the United States, Facebook that includes Facebook Ad Platform.

189. A claim chart explaining in further detail the manner in which Meta's Facebook Ad Platform infringes at least claims 1-18 of the '325 Patent is attached as Exhibit 10 and incorporated by reference.

190. Claim 1 of the '325 Patent is shown below:

| Element | Claim 1 of U.S. Patent No. 12,245,325 |
|---------|----------------------------------------|
| Preamble | A method of creating a situational network based on a projection from a multi-dimensional personal information network and for transmitting information related to a situation, the method comprising: |
| Element 1A | (a) creating, by an event node server, an event node in the multi-dimensional personal information network, wherein the multi-dimensional personal information network comprises member nodes, and the event node corresponds to the situation, wherein the event node is discoverable by browsing the multi-dimensional personal information network; |
| Element 1B | (b) identifying a subset of the member nodes of the multi-dimensional personal information network based on geographic proximity to the situation of a plurality of devices corresponding to the member nodes in the multi-dimensional personal information network; |
| Element 1C | (c) transmitting an invitation to establish a respective link with the event node server to devices corresponding to each node in the subset formed in step (b); |

| Element | Claim 1 of U.S. Patent No. 12,245,325 |
|---|---|
| **Element 1D** | (d) receiving a response from at least one of the devices from step (c) accepting the invitation to establish the respective link with the event node server; |
| **Element 1E** | (e) establishing the respective link with each device accepting the invitation to form the situational network; |
| **Element 1F** | (f) identifying a target member node wherein the target member node is connected to at least one node of the subset of the member nodes via at least one dimension of the multi-dimensional personal information network; and |
| **Element 1G** | (g) transmitting information related to the situation to the identified target member node. |

191.    Meta's Facebook Ad Platform includes "a method of creating a situational network based on a projection from a multi-dimensional personal information network and for transmitting information related to a situation, the method comprising" as required by the Preamble of Claim 1 of the '325 Patent, for example, as shown in Exhibit 10 at pp. 1-2.

192.    Meta's Facebook Ad Platform includes "(a) creating, by an event node server, an event node in the multi-dimensional personal information network, wherein the multi-dimensional personal information network comprises member nodes, and the event node corresponds to the situation, wherein the event node is discoverable by browsing the multi-dimensional personal information network" as required by Element 1A of Claim 1 of the '325 Patent, for example, as shown in Exhibit 10 at pp. 2-4.

193.    Meta's Facebook Ad Platform includes "(b) identifying a subset of the member nodes of the multi-dimensional personal information network based on geographic proximity to the situation of a plurality of devices corresponding to the member nodes in the multi-dimensional personal information network" as required by Element 1B of Claim 1 of the '325 Patent, for example, as shown in Exhibit 10 at pp. 5-7.

194.    Meta's Facebook Ad Platform includes "(c) transmitting an invitation to establish a respective link with the event node server to devices corresponding to each node in the subset formed in step (b)" as required by Element 1C of Claim 1 of the '325 Patent, for example, as shown in Exhibit 10 at pp. 7-8.

195.    Meta's Facebook Ad Platform includes "(d) receiving a response from at least one of the devices from step (c) accepting the invitation to establish the respective link with the event node server" as required by Element 1D of Claim 1 of the '325 Patent, for example, as shown in Exhibit 10 at pp. 8-9.

196.    Meta's Facebook Ad Platform includes "(e) establishing the respective link with each device accepting the invitation to form the situational network" as required by Element 1E of Claim 1 of the '325 Patent, for example, as shown in Exhibit 10 at pp. 9-10.

197.    Meta's Facebook Ad Platform includes "(f) identifying a target member node wherein the target member node is connected to at least one node of the subset of the member nodes via at least one dimension of the multi-dimensional personal information network" as required by Element 1F of Claim 1 of the '325 Patent, for example, as shown in Exhibit 10 at pp. 10-11.

198.    Meta's Facebook Ad Platform includes "(g) transmitting information related to the situation to the identified target member node" as required by Element 1G of Claim 1 of the '325 Patent, for example, as shown in Exhibit 10 at pp. a-b.

199.    Meta's Facebook Ad Platform embodies every element of Claim 1 of the '325 Patent, literally or under the doctrine of equivalents.

200.    On information and belief, Meta has been an active inducer of infringement of the '325 Patent under 35 U.S.C. § 271(b), because Meta aided, instructed, or otherwise acted with the

intent to cause acts by its customers and/or users of Facebook Ad Platform that would constitute direct infringement of the patent, including by instructing the users how to use Facebook Ad Platform features via user devices, Meta knew of the patent or showed willful blindness to the existence of the patent, and Meta's customers and/or users thereby directly infringed at least claim 1 of the '325 Patent.

201.    On information and belief, Meta has been a contributory infringer of the '325 Patent under 35 U.S.C. § 271(b), because Meta's customers and/or users have directly infringed at least claim 1 of the '325 Patent, Meta sold, offered for sale, or imported within the United States a component of Facebook Ad Platform for use in the infringing systems and methods, Facebook Ad Platform is not a staple article or commodity of commerce capable of substantial non-infringing use at least because the Facebook Ad Platform must be used with a user device, Facebook Ad Platform constitutes a material part of the claimed invention, Meta knew that the component was especially made or adapted for use as an infringement of one or more claims of the '325 Patent, and Meta's customers and/or users use Facebook Ad Platform in combination with user devices to directly infringe one or more claims of the '325 Patent.

202.    SitNet has been injured and seeks damages to adequately compensate it for Meta's infringement of the '325 Patent.  Such damages should be no less than a reasonable royalty under 35 U.S.C. § 284.

203.    Upon information and belief, Meta will continue to infringe the '325 Patent unless permanently enjoined by this Court.  Pursuant to 35 U.S.C. § 283, SitNet is entitled to a permanent injunction against further infringement of the '325 Patent by Meta.

<div align="center">

**COUNT V**

**Infringement of the '463 Patent**

</div>

204.    SitNet repeats and realleges all preceding paragraphs, as if fully set forth herein.

205.    SitNet has not licensed or otherwise authorized Meta to make, use, offer for sale, sell, or import any products that embody the inventions of the '463 Patent.

206.    Meta infringes at least claims 1-12 of the '463 Patent in violation of 35 U.S.C. § 271 at least with respect to at least Facebook Ad Platform.

207.    SitNet contends each limitation is met literally, and, to the extent a limitation is not met literally, it is met under the doctrine of equivalents.

208.    For example, Meta directly infringes at least claim 1 of the '463 Patent by making, using (e.g., performing/executing), selling, and/or offering to sell within the United States, Facebook that includes Facebook Ad Platform.

209.    A claim chart explaining in further detail the manner in which Meta's Facebook Ad Platform infringes at least claims 1-12 of the '463 Patent is attached as Exhibit 11 and incorporated by reference.

210.    Claim 1 of the '463 Patent is shown below:

| Element | Claim 1 of U.S. Patent No. 12,256,463 |
|---|---|
| Preamble | A method for forming a situational network and providing supplemental information comprising: |
| Element 1A | maintaining a database of a plurality of user nodes and multi-dimensional node-to-node links characterizing relationships between the plurality of user nodes via dimensions in a multi-dimensional information network; |
| Element 1B | obtaining an indication of an occurrence of a situation; |
| Element 1C | forming the situational network as a subset of the multi-dimensional information network based at least in part on the situation by: |
| Element 1D | establishing an event node corresponding to the situation, wherein the event node is discoverable to each respective user device of a plurality of user devices associated with the plurality of user nodes by browsing a data feed |

| Element | Claim 1 of U.S. Patent No. 12,256,463 |
|---|---|
| | provided based on the database and wherein the event node contains information pertinent to the situation; |
| **Element 1E** | creating a first subset of the plurality of user nodes based on a determination that the first subset of the plurality of user nodes is associated with devices that are in geographic proximity to the situation; |
| **Element 1F** | presenting the information pertinent to the situation to devices associated with the first subset of the plurality of user nodes; |
| **Element 1G** | joining at least a first node of the first subset of the plurality of user nodes to the event node based on interaction with the presented information pertinent to the situation; |
| **Element 1H** | receiving an indication of the supplemental information; |
| **Element 1I** | analyzing the database that comprises the multi-dimensional node-to-node links to identify a second node included in the database that is connected via at least one dimension in the multi-dimensional information network to a third node of the database, wherein the at least one dimension is indicative of potential interest in the situation; |
| **Element 1J** | providing to a device associated with the second node the supplemental information; and |
| **Element 1K** | in response to interacting with the supplemental information, causing a redirection of a web browser application operating on the device associated with the second node to a webpage containing information related to the situation. |

211.    Meta's Facebook Ad Platform includes "a method for forming a situational network and providing supplemental information comprising" as required by the Preamble of Claim 1 of the '463 Patent, for example, as shown in Exhibit 11 at pp. 1-2.

212.    Meta's Facebook Ad Platform includes "maintaining a database of a plurality of user nodes and multi-dimensional node-to-node links characterizing relationships between the plurality of user nodes via dimensions in a multi-dimensional information network" as required by Element 1A of Claim 1 of the '463 Patent, for example, as shown in Exhibit 11 at pp. 2-3.

213.    Meta's Facebook Ad Platform includes "obtaining an indication of an occurrence of a situation" as required by Element 1B of Claim 1 of the '463 Patent, for example, as shown in Exhibit 11 at p. 4.

214.    Meta's Facebook Ad Platform includes "forming the situational network as a subset of the multi-dimensional information network based at least in part on the situation by" as required by Element 1C of Claim 1 of the '463 Patent, for example, as shown in Exhibit 11 at pp. 4-7.

215.    Meta's Facebook Ad Platform includes "establishing an event node corresponding to the situation, wherein the event node is discoverable to each respective user device of a plurality of user devices associated with the plurality of user nodes by browsing a data feed provided based on the database and wherein the event node contains information pertinent to the situation" as required by Element 1D of Claim 1 of the '463 Patent, for example, as shown in Exhibit 11 at pp. 7-9.

216.    Meta's Facebook Ad Platform includes "creating a first subset of the plurality of user nodes based on a determination that the first subset of the plurality of user nodes is associated with devices that are in geographic proximity to the situation" as required by Element 1E of Claim 1 of the '463 Patent, for example, as shown in Exhibit 11 at p. 10.

217.    Meta's Facebook Ad Platform includes "presenting the information pertinent to the situation to devices associated with the first subset of the plurality of user nodes" as required by Element 1F of Claim 1 of the '463 Patent, for example, as shown in Exhibit 11 at p. 11.

218.    Meta's Facebook Ad Platform includes "joining at least a first node of the first subset of the plurality of user nodes to the event node based on interaction with the presented information pertinent to the situation" as required by Element 1G of Claim 1 of the '463 Patent, for example, as shown in Exhibit 11 at pp. 11-14.

219.    Meta's Facebook Ad Platform includes "receiving an indication of the supplemental information" as required by Element 1H of Claim 1 of the '463 Patent, for example, as shown in Exhibit 11 at pp. 14-15.

220.    Meta's Facebook Ad Platform includes "analyzing the database that comprises the multi-dimensional node-to-node links to identify a second node included in the database that is connected via at least one dimension in the multi-dimensional information network to a third node of the database, wherein the at least one dimension is indicative of potential interest in the situation" as required by Element 1I of Claim 1 of the '463 Patent, for example, as shown in Exhibit 11 at pp. 15-17.

221.    Meta's Facebook Ad Platform includes "providing to a device associated with the second node the supplemental information" as required by Element 1J of Claim 1 of the '463 Patent, for example, as shown in Exhibit 11 at p. 18.

222.    Meta's Facebook Ad Platform includes "in response to interacting with the supplemental information, causing a redirection of a web browser application operating on the device associated with the second node to a webpage containing information related to the situation" as required by Element 1K of Claim 1 of the '463 Patent, for example, as shown in Exhibit 11 at pp. 18-19.

223.    Meta's Facebook Ad Platform embodies every element of Claim 1 of the '463 Patent, literally or under the doctrine of equivalents.

224.    On information and belief, Meta has been an active inducer of infringement of the '769 Patent under 35 U.S.C. § 271(b), because Meta aided, instructed, or otherwise acted with the intent to cause acts by its customers and/or users of Facebook Ad Platform that would constitute direct infringement of the patent, including by instructing the users how to use Facebook Ad

Platform features via user devices, Meta knew of the patent or showed willful blindness to the existence of the patent, and Meta's customers and/or users thereby directly infringed at least claim 1 of the '463 Patent.

225.    On information and belief, Meta has been a contributory infringer of the '463 Patent under 35 U.S.C. § 271(b), because Meta's customers and/or users have directly infringed at least claim 1 of the '463 Patent, Meta sold, offered for sale, or imported within the United States a component of Facebook Ad Platform for use in the infringing systems and methods, Facebook Ad Platform is not a staple article or commodity of commerce capable of substantial non-infringing use at least because Facebook Ad Platform must be used with a user device, Facebook Ad Platform constitutes a material part of the claimed invention, Meta knew that the component was especially made or adapted for use as an infringement of one or more claims of the '463 Patent, and Meta's customers and/or users use Facebook Ad Platform in combination with user devices to directly infringe one or more claims of the '463 Patent.

226.    SitNet has been injured and seeks damages to adequately compensate it for Meta's infringement of the '463 Patent.  Such damages should be no less than a reasonable royalty under 35 U.S.C. § 284.

227.    Upon information and belief, Meta will continue to infringe the '463 Patent unless permanently enjoined by this Court.  Pursuant to 35 U.S.C. § 283, SitNet is entitled to a permanent injunction against further infringement of the '463 Patent by Meta.

## COUNT VI

### Infringement of the '052 Patent

228.    SitNet repeats and realleges all preceding paragraphs, as if fully set forth herein.

229. SitNet has not licensed or otherwise authorized Meta to make, use, offer for sale, sell, or import any products that embody the inventions of the '052 Patent.

230. Meta infringes at least claims 1-12 of the '052 Patent in violation of 35 U.S.C. § 271 at least with respect to at least Facebook Ad Platform.

231. SitNet contends each limitation is met literally, and, to the extent a limitation is not met literally, it is met under the doctrine of equivalents.

232. For example, Meta directly infringes at least claim 1 of the '052 Patent by making, using (*e.g.*, performing/executing), selling, and/or offering to sell within the United States, Facebook that includes the Facebook Ad Platform.

233. A claim chart explaining in further detail the manner in which Meta's Facebook Ad Platform infringes at least claims 1-12 of the '052 Patent is attached as Exhibit 12 and incorporated by reference.

234. Claim 1 of the '052 Patent is shown below:

| Element | Claim 1 of U.S. Patent No. 12,336,052 |
|---|---|
| Preamble | A method for creating a situational network as a subset of a larger multi-dimensional information network comprising a plurality of nodes, wherein the situational network is formed in response to an event in a particular geographical area, and wherein the situational network is created for delivering information to selected user nodes based in at least part on the situational network, the method comprising: |
| Element 1A | a) maintaining, by a networking server configured to maintain data defining the multi-dimensional information network, a database comprising: (i) a plurality of user nodes, and (ii) a plurality of multi-dimensional node-to-node links characterizing relationships between the plurality of user nodes via dimensions in the multi-dimensional information network, wherein at least some respective user nodes of the plurality of user nodes are associated with respectively user data; |

| Element | Claim 1 of U.S. Patent No. 12,336,052 |
|---|---|
| Element 1B | b) providing, by the networking server, to each user device of a plurality of user devices associated with the plurality of user nodes, a respective composite data feed that based on the database; |
| Element 1C | c) establishing, by an event node server, an event node associated with the event in the particular geographical area, wherein the event node is discoverable by each user device of the plurality of user devices by browsing the respective composite data feed; |
| Element 1D | d) creating, by the networking server, based on the database, a projection of the plurality of user nodes, the projection comprising a first subset of the plurality of user nodes associated with a first subset of the plurality of user devices, wherein the projection is created based on respective distances of devices of the first subset of the plurality of user devices from the event; |
| Element 1E | e) transmitting, by the networking server, a respective request in a form of a roll call to connect to the event node to each respective device of the first subset of the plurality of user devices; |
| Element 1F | f) joining, based on responses to each of the respective requests, a second subset of the plurality of user nodes to a centralized architecture for the event node, wherein the event node is configured as a central node in the centralized architecture for accessing information associated with the event from a location in the multi-dimensional information network, and wherein the second subset of the plurality of user nodes is associated with a second subset of the plurality of user devices; |
| Element 1G | g) storing, as node-to-node links in the database, data representing the joining of the second subset of the plurality of user nodes to the event node; |
| Element 1H | h) analyzing the database to identify a third subset of the plurality of user nodes in the database based at least in part on the data representing the joining of the second subset of the plurality of user devices to the event node; and |
| Element 1I | i) delivering additional information to a third subset of user devices associated with the third subset of the plurality of user nodes, wherein the supplemental information was received from an information node configured to store and provide supplemental information via the multi-dimensional information network. |

235.    Meta's Facebook Ad Platform includes "a method for creating a situational network as a subset of a larger multi-dimensional information network comprising a plurality of nodes, wherein the situational network is formed in response to an event in a particular geographical area,

and wherein the situational network is created for delivering information to selected user nodes based in at least part on the situational network" as required by the Preamble of Claim 1 of the '052 Patent, for example, as shown in Exhibit 12 at pp. 1-3.

236.    Meta's Facebook Ad Platform includes "a) maintaining, by a networking server configured to maintain data defining the multi-dimensional information network, a database comprising: (i) a plurality of user nodes, and (ii) a plurality of multi-dimensional node-to-node links characterizing relationships between the plurality of user nodes via dimensions in the multi-dimensional information network, wherein at least some respective user nodes of the plurality of user nodes are associated with respectively user data" as required by Element 1A of Claim 1 of the '052 Patent, for example, as shown in Exhibit 12 at pp. 3-5.

237.    Meta's Facebook Ad Platform includes "b) providing, by the networking server, to each user device of a plurality of user devices associated with the plurality of user nodes, a respective composite data feed that based on the database" as required by Element 1B of Claim 1 of the '052 Patent, for example, as shown in Exhibit 12 at pp. 5-6.

238.    Meta's Facebook Ad Platform includes "c) establishing, by an event node server, an event node associated with the event in the particular geographical area, wherein the event node is discoverable by each user device of the plurality of user devices by browsing the respective composite data feed" as required by Element 1C of Claim 1 of the '052 Patent, for example, as shown in Exhibit 12 at pp. 6-8.

239.    Meta's Facebook Ad Platform includes "d) creating, by the networking server, based on the database, a projection of the plurality of user nodes, the projection comprising a first subset of the plurality of user nodes associated with a first subset of the plurality of user devices, wherein the projection is created based on respective distances of devices of the first subset of the

plurality of user devices from the event" as required by Element 1D of Claim 1 of the '052 Patent, for example, as shown in Exhibit 12 at pp. 9-10.

240.    Meta's Facebook Ad Platform includes "e) transmitting, by the networking server, a respective request in a form of a roll call to connect to the event node to each respective device of the first subset of the plurality of user devices" as required by Element 1E of Claim 1 of the '052 Patent, for example, as shown in Exhibit 12 at pp. 10-12.

241.    Meta's Facebook Ad Platform includes "f) joining, based on responses to each of the respective requests, a second subset of the plurality of user nodes to a centralized architecture for the event node, wherein the event node is configured as a central node in the centralized architecture for accessing information associated with the event from a location in the multi-dimensional information network, and wherein the second subset of the plurality of user nodes is associated with a second subset of the plurality of user devices" as required by Element 1F of Claim 1 of the '052 Patent, for example, as shown in Exhibit 12 at pp. 12-15.

242.    Meta's Facebook Ad Platform includes "g) storing, as node-to-node links in the database, data representing the joining of the second subset of the plurality of user nodes to the event node" as required by Element 1G of Claim 1 of the '052 Patent, for example, as shown in Exhibit 12 at pp. 15-16.

243.    Meta's Facebook Ad Platform includes "h) analyzing the database to identify a third subset of the plurality of user nodes in the database based at least in part on the data representing the joining of the second subset of the plurality of user devices to the event node" as required by Element 1H of Claim 1 of the '052 Patent, for example, as shown in Exhibit 12 at pp. 16-18.

244.    Meta's Facebook Ad Platform includes "i) delivering additional information to a third subset of user devices associated with the third subset of the plurality of user nodes, wherein

the supplemental information was received from an information node configured to store and provide supplemental information via the multi-dimensional information network" as required by Element 1I of Claim 1 of the '052 Patent, for example, as shown in Exhibit 12 at pp. 18-20.

245.    Meta's Facebook Ad Platform embodies every element of Claim 1 of the '052 Patent, literally or under the doctrine of equivalents.

246.    On information and belief, Meta has been an active inducer of infringement of the '769 Patent under 35 U.S.C. § 271(b), because Meta aided, instructed, or otherwise acted with the intent to cause acts by its customers and/or users of Facebook Ad Platform that would constitute direct infringement of the patent, including by instructing the users how to use Facebook Ad Platform features via user devices, Meta knew of the patent or showed willful blindness to the existence of the patent, and Meta's customers and/or users thereby directly infringed at least claim 1 of the '052 Patent.

247.    On information and belief, Meta has been a contributory infringer of the '463 Patent under 35 U.S.C. § 271(b), because Meta's customers and/or users have directly infringed at least claim 1 of the '463 Patent, Meta sold, offered for sale, or imported within the United States a component of Facebook Ad Platform for use in the infringing systems and methods, Facebook Ad Platform is not a staple article or commodity of commerce capable of substantial non-infringing use at least because Facebook Ad Platform must be used with a user device, Facebook Ad Platform constitutes a material part of the claimed invention, Meta knew that the component was especially made or adapted for use as an infringement of one or more claims of the '052 Patent, and Meta's customers and/or users use Facebook Ad Platform in combination with user devices to directly infringe one or more claims of the '052 Patent.

248.    SitNet has been injured and seeks damages to adequately compensate it for Meta's infringement of the '052 Patent.  Such damages should be no less than a reasonable royalty under 35 U.S.C. § 284.

249.    Upon information and belief, Meta will continue to infringe the '052 Patent unless permanently enjoined by this Court.  Pursuant to 35 U.S.C. § 283, SitNet is entitled to a permanent injunction against further infringement of the '052 Patent by Meta.

## DEMAND FOR JURY TRIAL

SitNet hereby requests a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, SitNet prays for judgment as follows:

a)    That Meta directly and/or indirectly infringes one or more of the claims of each of the Patents-in-Suit;

b)    That Meta and its respective officers, directors, agents, partners, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, be permanently enjoined from engaging in infringing activities with respect to the Patents-in-Suit;

c)    In the alternative, in the event injunctive relief is not granted as requested by SitNet, an award of a mandatory future royalty payable on each future product sold by Meta on all future products which are not colorably different from products found to infringe;

d)    That Meta be required to pay SitNet's damages in an amount adequate to compensate SitNet for their infringement, but in no event less than a reasonable royalty under 35 U.S.C. § 284, including supplemental damages for any continuing

post-verdict infringement up until entry of judgment and beyond, with accounting, as needed;

e)     An accounting for acts of infringement;

f)     That SitNet be awarded all statutory and actual damages to which it is entitled, including the profits reaped by Meta through its illegal conduct, and prejudgment and post-judgment interest;

g)     A determination that Meta's acts of infringement of one or more of the Patents-in-Suit have been egregious and/or willful, and that SitNet is entitled to an award of enhanced damages of up to three times the amount of actual damages pursuant to 35 U.S.C. § 284;

h)     That SitNet be awarded recovery of the costs of this suit, including reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

i)     Such other equitable relief which may be requested and to which the Plaintiff is entitled; and

j)     That SitNet be awarded such other and further relief as this Court deems just and proper.

Dated: July 28, 2025

<div style="margin-left:40%">

s/ Naresh K. Kannan
Douglas J. Nash
John D. Cook
Nicole A. Mastrocinque (*admission to be sought*)
BARCLAY DAMON LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
(315) 425-2700
dnash@barclaydamon.com
jcook@barclaydamon.com
nmastrocinque@barclaydamon.com

</div>

Naresh K. Kannan
BARCLAY DAMON LLP
80 State Street
Albany, NY 12207
(518) 429-4200
nkannan@barclaydamon.com

Greg G. Gutzler
DICELLO LEVITT LLC
485 Lexington Avenue
Suite 1001
New York, New York 10017
(646) 933-1000
ggutzler@dicellolevitt.com

David L. Hecht
HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, New York 10017
(212) 851-6821
dhecht@hechtpartners.com

*Attorneys for Plaintiff SitNet LLC*