UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SITNET LLC, Plaintiff, -v- META PLATFORMS, INC., Defendant. | : | 25-CV-06185 (JAV) OPINION AND ORDER |

JEANNETTE A. VARGAS, United States District Judge:

On July 28, 2025, Plaintiff SitNet LLC ("Plaintiff" or "SitNet") brought this action against Defendant Meta Platforms, Inc. ("Defendant" or "Meta"). *See* ECF No. 1 ("Compl."). In its Amended Complaint, SitNet alleges that Meta infringed on multiple patents owned by SitNet in violation of U.S. patent law. ECF No. 36 ("Am. Compl."), ¶¶ 11-20. Meta moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 38 ("Mot. to Dismiss"). For the reasons that follow, the Motion is **GRANTED**.

## BACKGROUND

### A. Allegations in the Complaint

SitNet brings the instant action over purported infringements of five patents[1] issued to SitNet in 2024 and 2025: U.S. Patent No. 12,120,769 (the "'769 Patent"), U.S. Patent No. 12,238,815 (the "'815 Patent"), U.S. Patent No. 12,245,325 (the

[1] SitNet initially alleged in its original complaint that Meta infringed on six patents. ECF No. 1, ¶¶ 11-16.

"'325 Patent"), U.S. Patent No. 12,256,463 (the "'463 Patent"), and U.S. Patent No. 12,336,052 (the "'052 Patent") (collectively, the "SitNet Patents"). Am. Compl., ¶¶ 11-15, Exs. 2-6. SitNet is the sole owner by assignment of all rights, title, and interests in the SitNet Patents, including all rights to recover for any and all infringement. *Id.*, ¶ 16.

SitNet claims that, roughly two decades ago, it invented an unconventional concept known as a "situational network" that allows users to "be interconnected and receive information regarding an event or situation." *Id.*, ¶ 22. The purported application of this invention is to connect individuals affected by an event or situation together to enable them to acknowledge their safety during a crisis and to receive updates related to the event or situation. *Id.* According to SitNet, a situational network is formed by establishing "a subset network within a larger network, allowing for increased efficiency and faster response times when interconnecting the parties within the subset network when compared to conventional network architectures." *Id.*, ¶ 23.

SitNet filed a provisional patent application (U.S. Serial No. 60/887,843) with the U.S. Patent and Trademark Office ("USPTO") on February 2, 2007. *Id.*, ¶ 24. The SitNet Patents in dispute here each originate from and claim priority to that provisional application. *Id.*, ¶ 37. SitNet has not licensed or otherwise authorized Meta to make, use, offer for sale, sell, or import any of the SitNet Patents. *Id.*, ¶¶ 112, 153, 183, 203, 227.

SitNet asserts that Meta's Facebook product and software architecture infringe on the SitNet Patents by using SitNet's situational network technology. *See id.*, ¶¶ 69-110. Specifically, SitNet alleges that Meta's Facebook Crisis Response feature violates the SitNet Patents by "establish[ing] a situational network, connect[ing] users to a situational network, and allow[ing] the users to communicate via the situational network, including to offer or request help." *Id.*, ¶ 70 & Ex. 27. Once activated, Facebook's Crisis Response sends a Safety Check notification to users within the situational network to mark themselves as safe and to receive updates from others inside the affected area.[2] *Id.*, ¶ 73 & Ex. 28.

SitNet additionally claims that Meta's Facebook Ad Platform/Meta Marketing API infringes on the SitNet Patents by incorporating situational network technology in its targeted advertising, including its "Personalization Algorithms, Lookalike Audiences, Custom Audiences, Dynamic Audiences and other Targeting Options." *Id.*, ¶¶ 82-83 & Exs. 24-25. Finally, SitNet alleges that Meta's software architecture infringes on the SitNet Patents "through its implementation and utilization of Facebook Crisis Response and Facebook Ad Platform." *Id.*, ¶ 110; *see also id.*, ¶¶ 84-109.

**B. Prior Litigation History**

This is not the first instance of SitNet accusing Meta of patent infringement. Roughly three years ago, SitNet sued Meta for allegedly infringing four of SitNet's

[2] Facebook's Crisis Response feature incorporates user location and other information, including city location, to determine whether a user is within the impacted area. *Id.*, ¶ 74.

patents. *See SitNet LLC v. Meta Platforms, Inc.*, No. 23-CV-6389 (AS), 2024 WL 1178300 (S.D.N.Y. Mar. 19, 2024) (hereinafter "*SitNet I*"). Like the SitNet Patents at issue here, the *SitNet I* patents originate from the same February 2, 2007 provisional application and involve similar claims relating to a situational network system. *Compare id.*, ECF No. 1 ("*SitNet I* Compl."), ¶ 20 & Exs. 1-4, *with* Am. Compl., ¶¶ 117, 158, 188, 208, and 232.

At the motion to dismiss stage in *SitNet I*, Judge Subramanian invalidated one of the asserted patents (the '682 Patent), while allowing the claims related to the remaining three patents (the '345 Patent, '932 Patent, and '454 Patent) to proceed. *SitNet I*, 2024 WL 1178300, at *6, *8. Applying the *Alice* test, Judge Subramanian held that the '682 Patent was "directed to an abstract idea" and lacked an inventive concept, while the other three patents raised "plausible factual disputes over inventiveness."[3] *Id.* at *5-6; *see also Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). Despite expressing reservations that the surviving patents "add[ed] anything inventive," Judge Subramanian nonetheless concluded that "skepticism alone is not grounds for dismissing a complaint." *Id.* at *7-8.

On July 16, 2024, Judge Subramanian held at the claim construction stage that the term "situational network" meant "a network created in response to an event or situation." *SitNet LLC v. Meta Platforms, Inc.*, No. 23-CV-6389 (AS), 2024

---

[3] The *SitNet I* court described the representative '682 Patent as "collecting information identifying a situation, providing that information to a set of users, analyzing the information to make sure it [was] related to the situation, and then providing other information" to a second set of users located near the situation. *SitNet I*, 2024 WL 1178300, at *5.

WL 3429439, at *1-2 (S.D.N.Y. July 16, 2024). Subsequently, Meta filed *inter partes* review ("IPR") petitions for the three surviving *SitNet I* patents with the Patent Trial and Appeal Board ("PTAB") of the USPTO in September 2024. *See SitNet I*, ECF No. 119 at 1. Judge Subramanian subsequently stayed the *SitNet I* matter pending resolution of the PTAB's review. *Id.* at 2.

On September 8, 2025, the PTAB issued its final decision, concluding that all three of the surviving *SitNet I* patents were unpatentable. *See Meta Platforms, Inc. v. Sitnet, LLC*, No. IPR2024-00530, 2025 WL 2639820 (P.T.A.B. Sept. 8, 2025); *Meta Platforms, Inc. v. Sitnet, LLC*, No. IPR2024-00612, 2025 WL 3727463 (P.T.A.B. Sept. 8, 2025); *Meta Platforms, Inc. v. Sitnet LLC*, No. IPR2024-00529, 2025 WL 2639630 (P.T.A.B. Sept. 8, 2025). The PTAB further denied SitNet's motion to amend one of the patents (the "'435 Patent"), determining that the proposed amendments were similarly unpatentable under Section 101 based on the preponderance of evidence. *Meta*, 2025 WL 2639820, at *24-28.

## LEGAL STANDARDS

### A. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court accepts as true all factual allegations and draws all reasonable inferences in favor of the non-moving party. *See Romanova v. Amilus Inc.*, 138 F.4th 104, 108 (2d. Cir.

2025). "A court need not, however, 'accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 109 (quoting *Ashcroft*, 556 U.S. at 678).

Additionally, for purposes of a Rule 12(b)(6) motion, the complaint is deemed to include all documents incorporated by reference or integral to the complaint, including the underlying patent. *See, e.g.*, *Linfo IP, LLC v. Trustpilot, Inc.*, 761 F. Supp. 3d 679, 683 (S.D.N.Y. 2025). "[I]f the complaint and patents-in-suit conflict, [however], the complaint's allegations yield to the patents' specifications and claims." *SitNet I*, 2024 WL 1178300, at *2.

**B. Section 101 and *Alice***

Section 101 of the Patent Act provides that patent eligible subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has long carved out an exception to that provision, holding that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 573 U.S. at 216 (citation omitted).

A party may thereby assert patent ineligibility as an affirmative defense to a claim of patent infringement. *See Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1289 (Fed. Cir. 2024). While patent eligibility is a question of law that "may contain underlying issues of fact," a court may nevertheless resolve the issue at the pleading stage when "[the] facts supporting the defense appear on the face of the complaint," and other materials that a court may properly consider at the motion to dismiss stage. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018); *In re*

*Nine W. LBO Sec. Litig.*, 87 F.4th 130, 142 (2d Cir. 2023); *SitNet I*, 2024 WL 3429439, at *2.

In assessing whether an invention is patentable, courts apply the Supreme Court's two-step framework, commonly known as the *Alice* test. *See Alice*, 573 U.S. at 217-18. Under this framework, courts first "determine whether a claim is directed to a patent-ineligible concept, [such as] an abstract idea," and if the answer is yes, we then "review whether the claim recites elements sufficient to transform it into a patent-eligible application of the abstract idea." *Broadband iTV, Inc. v. Amazon.Com, Inc.*, 113 F.4th 1359, 1367 (Fed. Cir. 2024) (citing *Alice*, 573 U.S. at 217-18).

**C. Claim Construction**

Although a claim construction hearing may be necessary before deciding a motion to dismiss, it "is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Servs. L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012). Where claims are patent-ineligible under all plausible constructions, a court may resolve a Section 101 motion without first conducting claim construction. *See Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 704 (Fed. Cir. 2023); *see, e.g.*, *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) (finding no error in district court's determining ineligibility before claim construction hearing where patentee failed to explain "how it might benefit from any particular term's construction"). Consequently, proposed constructions that would not "make any difference to the Alice analysis" allows the

Court to forgo a claim construction hearing. *Sanderling*, 65 F.4th at 704.

Although SitNet has proposed constructions for five disputed claim terms, *see* ECF No. 58, the Court need not resolve those disputes before deciding the present motion. SitNet's proposed constructions principally require automatically generating links between user nodes and an event node, connecting projected subsets of nodes to form a situational network, and controlling access to and distribution of event-related information via a centralized architecture. *See* ECF No. 59-1 at 2-5. Even if the Court were to adopt these constructions, they would not materially alter the Court's analysis under Section 101. *See, e.g.*, *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (affirming dismissal before claim construction where patentee "provided no proposed construction of any terms or proposed expert testimony that would change the § 101 analysis").

As explained below, the claims are directed to the abstract idea of collecting, analyzing, and displaying information. *See infra* Discussion § B. The additional claim limitations do not transform that idea into a patent-eligible application because they fail to identify how they produce any network efficiencies and instead implement an abstract idea using conventional computer components in an uninventive arrangement. *See infra* Discussion § C. SitNet's proposed constructions do not cure these defects because they still involve the abstract idea of collecting, analyzing, and displaying information, without identifying any improvement to computer network technology. Accordingly, because the proposed

constructions would not affect either step of the *Alice* analysis, the Court will resolve the present motion without undertaking claim construction. *See Sanderling*, 65 F.4th at 704.

## DISCUSSION

Meta moves to dismiss SitNet's patent infringement claims on the grounds that the asserted patents are abstract and directed to patent-ineligible subject matter under 35 U.S.C. § 101. ECF No. 39 ("Def. Mem.") at 1-2. Specifically, Meta contends that "using computers to collect, analyze, and share information about an event or situation with people who might be interested" amounts to an abstract idea. *Id.* at 1. Meta further argues that the SitNet Patents merely implement that patent-ineligible idea by using "off-the-shelf technology in existing computer networks," without improving computer technology or otherwise supplying an "inventive" concept. *Id.*

For the reasons that follow, the Court agrees with Meta. Accordingly, these claims are dismissed.

### A. Asserted Factual Disputes

At the outset, SitNet argues that certain material factual disputes concerning whether a situational network architecture is "conventional" preclude this Court from deciding whether the SitNet Patents add anything inventive. *See* ECF No. 48 ("Opp'n") at 9-15. In support, SitNet references a 2016 blog post published by Meta, which observed that Meta incorporated SitNet's technological solutions to resolve technological problems existed with conventional networking architectures. *Id.* at

9; *see* Am. Compl., ¶¶ 60-66 & Ex. 26 ("Meta Blog Post") at 2 (describing goals of Facebook's Safety Check feature as "identify[ing] people who are likely in an affected area, collect[ing] their safety status, and quickly send[ing] that information out to friends and family"). The article further noted that conventional computer networks "require[d] a large amount of storage and computing power to maintain," were "less efficient," and used a limited "push model."[4] Am. Compl., ¶¶ 60-66; Meta Blog Post at 3. SitNet then contends that its "unconventional architecture of a 'situational network'" resolved these problems by determining "how to efficiently share information among network user devices in response to a newly arising situation/event." Opp'n at 10.

The Court finds this argument unconvincing. For one, the Meta blog post is a red herring. Even if technological problems associated with conventional networks persisted after the priority date of the SitNet Patents, SitNet fails to explain ***how*** its purported technological solution—creating a subset network within a larger situational network—resolved any of those problems. Nor does SitNet sufficiently explain why that dispute is material to the present inquiry. Thus, the factual dispute, if one exists, over whether conventional network systems experienced technological flaws in 2016 poses no obstacle to the Court's resolution of the instant motion.

---

[4] A "push" model works by "proactively send[ing] everyone in the affected area a notification," while a "pull" model "present some kind of experience when you open the Facebook app." *See* Am. Compl., ¶ 62; Meta Blog Post at 2.

### B. *Alice* Step One

At *Alice* step one, courts "evaluate 'the focus of the claimed advance over the prior art' to determine if the character of the claim as a whole . . . is directed to" an abstract idea. *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019) (citations omitted). "In cases involving software innovations, this inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies [as] an abstract idea for which computers are invoked merely as a tool." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020) (citations omitted). While "non-abstract improvements to the functionality of a computer or network platform" are patent-eligible, *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1309 (Fed. Cir. 2020), "generalized steps . . . performed on a computer using conventional computer activity" are not. *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (cleaned up).

To avoid "overgeneralizing claims" in the Section 101 analysis, courts "must focus on the language of the Asserted Claims themselves." *TecSec*, 978 F.3d at 1292-93 (quoting *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016)). Otherwise, courts risk "describing the claims at 'such a high level of abstraction and untethered from the language of the claims' that the claims would be virtually guaranteed to be abstract." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361 (Fed. Cir. 2023) (citations omitted).

### 1. The ’769 Patent is Representative of all the SitNet Patents

In accordance with this guidance, we begin with the claim language. Claim I of the ’769 Patent recites:

> “[a] computer-implemented method . . . maintain[ed] [] by a . . . [multi-dimensional information] networking [server] . . . [providing] . . . user devices . . . composite data feeds that are based on the database of the plurality of user nodes . . . [and establishing] an event node associated with an event in a particular geographic area . . . discoverable to each respective user device . . . [and joining] user devices that have discovered the event node . . . [creating] a projection of the plurality of user nodes . . . represent[ing] a second subset of user devices . . . selected based on [their] respective distances . . . from the event; transmitting . . . requests to connect to the event node to the second subset of user devices . . . in forms of roll calls; recording respective responses to the respective requests to connect; making a subset of the respective responses viewable . . . [and] delivering information to the at least one second node . . . to store and provide supplemental information.

Am. Compl., Ex. 2 (“’769 Patent”) at 34:24–35:26.[5] Simply translated, Claim I of the ’769 Patent describes a computer network that connects users together based on their relationship and proximity to an event, sends them check-in requests, shares response with their connections, and delivers related information to other connected users.

Before proceeding further, we must address whether to treat Claim I of the ’769 Patent as representative of the asserted claims all the SitNet Patents. “Limiting the analysis of a § 101 challenge to representative claims is proper when

[5] Claim 1 of all the SitNet Patents is reproduced in the Appendix.

the claims at issue are 'substantially similar and linked to the same' ineligible concept." *Mobile Acuity*, 110 F.4th at 1290. Courts may also do so when "the patentee does not present any meaningful argument for the distinctive significance of any claim limitations ***not found in the representative claim***." *Id.* (emphasis added) (citing *Berkheimer*, 881 F.3d at 1365).

Here, SitNet argues that Meta "improperly treats certain claims as representative while ignoring meaningful differences in others that supply additional technological limitations." Opp'n at 22. Yet instead of identifying those differences (or explaining their significance), SitNet myopically challenges the accuracy of Meta's "plain-language summary" of the '815 Patent. *Id.* SitNet separately attempts to distinguish the individual claims of the '463 Patent from each other based on "how nodes are linked between one another and/or the situational network." *Id.* at 22-23 (explaining that Claim 5 of the '463 Patent "identif[ies] an indirect link between the second node and the third node, wherein the third node is joined to the event node," whereas Claim 6 of the '463 Patent "identif[ies] the second node based on a dimension in the multi-dimensional information network other than . . . with the event node").

The Court finds these differences to be immaterial. When read together, all five of the SitNet Patents have substantially similar Claim 1 subject matter and belong to the same patent family. They each describe, with minor syntactical differences, an event-based network (i.e. a "situational network") based on users' geographic locations and social connections, and then distributing event-related

information to connected users. *Compare* Am. Compl., ¶ 117, *with id.*, ¶¶ 158, 188, 208, 232. Although their claims differ in specific requirements—such as roll-call responses, invitations, supplemental information, and webpage redirection—they share the same core technical concept of this event-based network.

The main distinction, however, between the ’769 & ’815 Patents and the ’463, ’325, and ’052 Patents is that the latter group refers to a “situational network.” *Compare id.*, ¶¶ 117, 158, *with id.*, ¶¶ 188, 208, 232; *see also* Def. Mem. at 17-18. Nevertheless, the inclusion of this term in some of the SitNet Patents and not others does not meaningfully differentiate them because all the SitNet Patents mention a multi-dimensional informational network based on an “event” or “situation”—in other words, a situational network. Additionally, unlike in *SitNet I*, the Court here views these claims with the aid of the construction in *SitNet I*, where Judge Subramanian, following a *Markman* hearing defined a “situational network” as “a network created in response to an event or situation.” *SitNet*, 2024 WL 3429439, at *1-2. Because the construction of a claim’s term applies equally to similar patents, *see Samsung Elecs. Co., Ltd. v. Elm 3DS Innovations, LLC*, 925 F.3d 1373, 1378 (Fed. Cir. 2019) (“Where multiple patents derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents.” (citation omitted)), the Court will apply this meaning to each of the SitNet Patents, which are all members of the same patent family.

In doing so, the Court concludes that the SitNet Patents—when stripped of

their technical jargon—appear as mirror images of each other. Accordingly, the Court will treat Claim I of the '769 Patent as representative of the claims in the SitNet Patents, given their closely related descriptions and SitNet's failure to meaningfully distinguish them. *See Mobile Acuity*, 110 F.4th at 1290.

**2. The SitNet Patents Are Directed to An Abstract Idea**

Having established Claim 1 of the '769 Patent as the representative claim, we now turn to the heart of the Section 101 analysis: whether Claim I of the '769 Patent is directed to an abstract idea, focusing on "the claimed advance over the prior art." *Trinity*, 72 F.4th at 136. On this point, SitNet contends that the claims are not abstract because they improve the computer network by creating an "unconventional" situational network architecture that "results in improved network efficiency and a reduction in the network resources needed to operate and maintain the situational network." Opp'n at 16. In support of this argument, SitNet analogizes its claims to those found patent-eligible in *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127 (Fed. Cir. 2022).

In *Coop*, the claim involved the creation of a new type of network structure for sharing content through a dynamic P2P network that claimed to improve the performance of content delivery networks. *Id.* at 131, 133. The court credited the claim with two principal inventive concepts: (1) the creation of a "dynamic P2P network wherein multiple peer nodes consume the same content and are configured to communicate outside the CDNs" and (2) the use of trace routes in content segmentation. *Id.* at 131. The claims also explained, in minute detail, how this

innovative dynamic P2P network improved upon prior art: allowing for live video streaming over PTP networks outside the structure and control of Content Delivery Networks (CDNs) and providing for smooth playback and avoiding stuttering or buffering problems. *Id.* at 132.

Unlike *Coop*, however, SitNet's claims do not identify a specific improvement to network architecture or explain how the claimed features achieve the asserted technological benefits. Instead, they vaguely describe the desired improvements in highly abstract terms. *See Trinity*, 72 F.4th at 1361-62 (noting that "[a] telltale sign of abstraction is when the claimed functions are mental processes that can be performed in the human mind or using a pencil and paper" (cleaned up)). The supposed novelty of SitNet's claims, *i.e.*, creating a network linking users to an event and transmitting information related to that event, do not constitute a ***new type*** of network architecture. Rather, Claim 1 of the '769 Patent applies a multi-dimensional informational network to the particular context of an event or situation, without reciting a specific improvement to the underlying network architecture. *See GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1064 (Fed. Cir. 2026) ("[A]n abstract idea remains an abstract idea even when narrowed—*e.g.*, by subject matter—to a particular use or environment.").

Federal Circuit cases addressing similar computer network systems further nudges these patents squarely into the abstract-idea realm. *See Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016) (explaining courts should consider how previous decisions have analyzed similar patent claims). As

noted in *SitNet I*, SitNet's situational network patents are strikingly similar to those found patent-ineligible in *Trinity* and *Sanderling*. *See SitNet I*, 2024 WL 1178300, at *4-5.

In *Trinity Info Media, LLC v. Covalent, Inc.*, the claims involved using generic computer devices (such as a "hand-held device") to receive user information, generate a profile, send a user a polling question, receive the user's answer, and display the user's profile to other users. 72 F.4th at 1362. The Federal Circuit held those claims constituted an abstract idea as they "focused on 'collecting information, analyzing it, and displaying certain results,'" rather than providing "an improvement to computer technology" for doing so. *Id.* at 1361-63 (quoting *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016)).

Likewise, in *Sanderling*, the claims involved a "computerized method of distributing" information to mobile devices based on "geographic location." 65 F.4th at 701-03. The court concluded that such claims were "not directed to a specific improvement in computer functionality but, instead, to the use of computers as a tool . . . to identify when a condition is met and then to distribute information based on satisfaction of that condition." *Id.* at 703. Accordingly, in both cases, the Federal Circuit has distilled a general principle that claims involving a "generic set of steps" to merely collect, analyze, and display information are not patent eligible. *See Trinity*, 72 F.4th at 1361-63; *Sanderling*, 65 F.4th at 701-03.

SitNet attempts to distinguish these cases by arguing that its claims recite "multiple technological improvements" not present in *Trinity* or *Sanderling*, which

include "specific details of how a situational network is formed and how a projected view or subset network is created." Opp'n at 17-18. SitNet further asserts that the Court in *SitNet I* found its claims "to be directed to technological features that were 'unlike *Trinity*, *Sanderling*' and denied dismissal." *Id.* at 17 (quoting *SitNet I*, 2024 WL 1178300, at *6).

These arguments are unavailing. First, while SitNet does assert certain technological improvements based on its situational network system, it fails to explain how those purported benefits, *e.g.*, in providing "faster load times" and "reduce[d] resource requirements," Am. Compl., ¶ 26, are anything other than improvements "inherent with applying the abstract idea." *Sanderling*, 65 F.4th at 705 (quoting *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015)). Claim 1 of the 769 Patent, for instance, describes a multi-dimensional informational network that provides user devices "composite data feeds that are based on the database of the plurality of user nodes . . . [and establishes] an event node associated with an event in a particular geographic area," Am. Compl. ¶ 117, yet it is entirely unclear how these features actually improve network functionality.[6] *See Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024) (explaining that claims involving "result-focused functional language,

[6] SitNet's bare assertions that its "unconventional computer networking architecture" produces numerous technological improvements, *see* Opp'n at 9-15, cannot save it claims, even at the pleading stage, as the Court need not credit conclusory allegations "wholly divorced" from the claim specifications. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019); *see also Simio,* 983 F.3d at 1365 ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6).").

containing no specificity about how the purported invention achieves those results . . . are almost always found to be ineligible"). SitNet's claims thereby fall into the familiar trap of failing to specify ***how*** its claims improve the functioning of the computer system in a non-abstract way.[7]

SitNet's claims thus are not meaningfully different from the kind of "collect, analyze, and display" claims found ineligible in *Trinity* and *Sanderling*. *See also Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1361-62 (Fed. Cir. 2021) (concluding that claims directed to "gathering information" about users, "matching the information with other content," and "sending that content" to user devices were abstract). Claim 1 of the '769 Patent essentially boils down to linking users together based on an event or situation, collecting/analyzing information related to that event, providing that information to a set of users, and then distributing other information to a second set of users located nearby. The claims repeat the same "generic set of steps" of collecting information, analyzing it, and redistributing it based on an arbitrary condition, here proximity to an event or situation. *See Trinity*, 72 F.4th at 1361-63; *Sanderling*, 65 F.4th at 701-03; *Free Stream*, 996 F.3d

[7] *See, e.g.*, *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1334-38 (Fed. Cir. 2017) (concluding claim describing method for transmitting packets of information over communications network were ineligible because they merely recited series of abstract steps: "converting" information into streams of digital packets; "routing" streams to users; "controlling" routing; and "monitoring" receipt of packets by users); *Elec. Power Grp.*, 830 F.3d at 1351, 1354 (holding claims involving systems for achieving real-time performance monitoring of electric power grid were directed to abstract idea of "gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions").

at 1361-62.

Second, SitNet misreads *SitNet I* when it argues that Judge Subramanian held its claims were not abstract at *Alice* step one because they included technological features lacking in *Trinity* or *Sanderling*. Opp'n at 17-18. To the contrary, the only patent that the *SitNet I* court analyzed at *Alice* step one—which shares many similar descriptions to Claim 1 of the '769 Patent—was deemed an abstract idea.[8] The *SitNet I* court then observed that the other three claims at issue "might also be directed to abstract ideas," but ultimately concluded that it need not reach this issue because it held that the pleadings were sufficient to satisfy *Alice* step two. *SitNet I*, 2024 WL 1178300, at *5. Thus, *SitNet I* never held that any technological features of the surviving patents rendered their claims non-abstract.

Aside from these arguments, SitNet makes a last-ditch effort to salvage its patents by claiming that this Court should defer to the USPTO's approval of the SitNet Patents because their eligibility under Section 101 was already considered during the prosecution process. Opp'n. at 5-7. As with its invocation of *SitNet I*, SitNet's reliance on the USPTO proceedings falls flat. SitNet overlooks Federal Circuit precedent that expressly holds "a patent examiner's consideration of Section 101 issues does not 'in any way shield the patent's claims from Article III review for patent eligibility.'" *Beteiro*, 104 F.4th at 1359 (quoting *Elec. Commc'n Techs., LLC*

---

[8] *SitNet I*, 2024 WL 1178300, at *5 (holding abstract SitNet's "claim involves collecting information identifying a situation, providing that information to a set of users, analyzing the information to make sure it is related to the situation, and then providing other information (a message board with a roll call list) to a second set of users (those near the situation)").

*v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1183 (Fed. Cir. 2020)). Thus, the USPTO's prior approval of the SitNet Patents in no way constrains the Court's obligation to independently evaluate their eligibility. *See, e.g.*, *Elec. Commc'n Techs.*, 958 F.3d at 1183 (affirming invalidation where patentee had "requested the USPTO to 'double-check' its work on § 101").

By contrast, the *inter partes* review of the three surviving patents from *SitNet I* are of far more relevance here, although they too do not bind this Court. In those proceedings, the PTAB determined that the surviving *SitNet I* patents—which belong to the same patent family as the SitNet Patents here—were unpatentable on obviousness grounds under 35 U.S.C. § 103.[9] Separately, in addressing SitNet's proposed substitute claims, the PTAB applied the *Alice* framework and determined that the proposed amendment was patent ineligible under Section 101 because it involved "the collection, manipulation, and presentation/display of data" and "the abstract idea of managing interaction between people." *See Meta*, 2025 WL 2639820, at *23-25 (describing substitute claims as "receiving indication data, forming a network for aggregating data, presenting solicitation data, and then receiving and aggregating the responsive data"). Although neither determination resolves the eligibility of the claims presently before this Court, the PTAB's Section 101 analysis is instructive, particularly given the overlapping subject matter of the related patents.

[9] *See Meta*, 2025 WL 2639820, at *20; *Meta*, 2025 WL 3727463, at *13; *Meta*, 2025 WL 2639630, at *10, *12.

Accordingly, the Court concludes that under *Alice* step one, Claim 1 of the ’769 Patent and the other asserted claims in the SitNet Patents (of which it is representative for eligibility purposes) are directed to an abstract idea. The claims are therefore patent ineligible under Section 101 unless rescued under *Alice* step two.

**C. *Alice* Step Two**

At step two, the Court determines whether the claim elements, individually or in an ordered combination, add something "inventive" that is "sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 72 (2012)). That being said, "[t]he abstract idea itself cannot supply the inventive concept, 'no matter how groundbreaking the advance.'" *Trading Techs. Int'l*, 921 F.3d at 1093 (quoting *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1171 (Fed. Cir. 2018)). Applying an abstract idea with "well-understood," "routine," or "conventional" computing technologies is likewise not inventive. *Id.* (citation omitted). Nor is reciting "generic functional language" to achieve the claimed results, without demonstrating "*how* the desired result is achieved." *Two-Way Media*, 874 F.3d at 1339 (quoting *Elec. Power Grp.*, 830 F.3d at 1355).

The ultimate determination of *Alice* step two is a question of law. *See Beteiro*, 104 F.4th at 1357. While underlying factual disputes material to that decision, such as "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field," must

be proven by clear and convincing evidence. *Berkheimer*, 881 F.3d at 1368 (citing *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011)).

SitNet argues that the claims in the '769 Patent contain multiple inventive concepts. SitNet's first asserted inventive concept is "a projection of the plurality of user nodes" of "the multi-dimensional information network that are joined to a centralized architecture for the event node." Opp'n at 19; *see also* '769 Patent, at 34:58-59, 35:13-15. SitNet contends that this "limitation contributes to improved network efficiency by limiting processing to a projection of the plurality of user nodes, reducing resource usage and load times compared to conventional full-network architectures." Opp'n at 19; *see also* '769 Patent, at 17:5-10. The second asserted inventive concept likewise involves "a projection of the plurality of user nodes," but to "a second subset of user devices" based on their proximity to the event. Opp'n at 19-20; *see also* '769 Patent, at 36:23-29. SitNet maintains that this limitation achieves similar technological improvements by "enabling a push-model and limiting pulls." Opp'n at 20. SitNet's third asserted inventive concept involves "joining the first subset of the plurality of user devices that have discovered the event node to the event node," which purportedly improves network efficiency. *Id.*; *see also* '769 Patent, at 37:55-60.[10]

These asserted inventive concepts fail for three related reasons. First, the

[10] While the present analysis is limited to the '769 Patent, the representative patent, the Court nevertheless notes that the asserted inventive concepts for the remaining patents (the '815, '325, '463, and '052 Patents) rest on substantially the same efficiencies. Opp'n at 20-21.

claim limitations merely recite the abstract processes of collecting, analyzing, and distributing data, without specifying how those processes achieve the asserted technological efficiencies. Second, to the extent those efficiencies exist, they reflect improvements in the abstract idea itself, rather than improvements to the functioning of computer networks. Third, the claims implement those processes using conventional computer components, without reciting an unconventional arrangement that transforms the abstract idea into a patent-eligible application.

Starting with the first issue, although SitNet identifies purported benefits in processing speed, resource usage, and network efficiency, it offers no meaningful explanation of how any particular claim limitation produces those improvements. Opp'n at 19-21; *see also* Am. Compl., ¶¶ 23, 27. Merely asserting technological improvements, without explaining in detail ***how*** the claim limitations achieve them, does not "'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221; *see also GoTV Streaming*, 166 F.4th at 1067-68 ("[A]dding computer functionality to increase the speed or efficiency of [a] process does not confer patent eligibility on an otherwise abstract idea." (citation omitted)).

The PTAB rejected substantially the same argument in considering SitNet's proposed substitute claim, which recited "forming a situational network for aggregating data by establishing an event node and then connecting the event to existing nodes within the social network to aggregate data therefrom." *Meta*, 2025 WL 2639820, at *27. SitNet argued there, as it does here, that its "unconventional" network architecture increased processing speed and reduced computing resources,

including CPU and memory requirements. *Id.* at *26-27. The Board expressly dismissed that argument based on the claim's limitations, explaining that the proposed language:

> does not explain how these devices forming a network to perform activities such as collecting, manipulating and displaying and data in various forms, improves a computer or another technology. Rather, we determine that the application of an "event node server" and "participant devices" is an insignificant post-solution step for forming a network in the performance of an abstract idea. That is, the Specification does not provide the detail necessary to be an "improvement" of a computer or technology apparent to a person of ordinary skill in the art.

*Meta*, 2025 WL 2639820, at *28 (citations omitted).

The same reasoning applies here. The claimed efficiencies associated with "limiting processing to a projection of the plurality of user nodes" may reduce the amount of information processed and limit unnecessary pulls, but those efficiencies arise from limiting the users and information involved, not from improving the functioning of the network itself. Opp'n at 19; *see also* '769 Patent, at 17:5-10. The problem, therefore, is that SitNet's claims fail to identify any technological mechanism that produces the asserted improvements.

Turning to the second issue, the asserted inventive concepts do not improve computer technology but merely reflect "the improved speed or efficiency inherent with applying the abstract idea on a computer." *Sanderling*, 65 F.4th at 705 (citation omitted). All three asserted concepts involve projecting information from and connecting users to a "multi-dimensional information network that are joined to a centralized architecture for the event node," *see* Am. Compl., ¶ 117, which are

nothing more than "'generic features' or 'routine functions' to implement the underlying abstract idea" of a situational network system. *Trinity*, 72 F.4th at 1367 (citation omitted) (holding claims did not provide inventive concept that used "general-purpose processors to perform the steps of collecting, transmitting, receiving, and compiling users' answers and matches"). Thus, the alleged improvements, to the extent they even exist, amount to "improvement[s] in the collection, manipulation and display of data (i.e., an abstract idea), which is still an abstract idea." *Meta*, 2025 WL 2639820, at *27 (citing *Synopsys*, 839 F.3d at 1151).

Nor do the claims supply an inventive concept through an unconventional arrangement of computer components. Rather, the claimed "multi-dimensional information network," "links," "information node," "event node," and "user nodes" describe familiar features of a social network, not improvements to the functioning of computer technology. *See Meta*, 2025 WL 2639820, at *27 (finding that "the 'situational network' and 'N-dimensional social network' are implemented 'using available hardware and technologies generally known in the art'" (cleaned up)); *see also Trinity*, 72 F.4th at 1367; *Elec. Power Grp.*, 830 F.3d at 1355. SitNet's descriptions of routine processes performed using conventional computer components therefore do not supply the requisite inventive concept, whether the limitations are considered individually or as an ordered combination.

Finally, the Court separately addresses the inclusion of the "situational network" term in the '325, '463, and '052 Patents. *See* Am. Compl., ¶¶ 188, 208, and 232. Although that term does not appear in the '769 Patent claims, its addition in

other SitNet Patents warrant separate consideration because Judge Subramanian declined to dismiss three related patents in *SitNet I* based on a plausible factual dispute concerning the inventiveness of a "situational network." *SitNet I*, 2024 WL 1178300, at *6. That ruling, however, does not compel the same result here.

In *SitNet I*, the Court credited SitNet's allegation that its situational network employed a "push model" that improved network efficiency, finding "a plausible factual dispute over whether a situational network in fact operates in this way and whether that operation was inventive." *Id.* The later claim construction in *SitNet I*, however, established that a "situational network" simply means a "network created in response to an event or situation," a definition that does not require a push model or any unconventional network architecture. *SitNet*, 2024 WL 3429439, at *1-2. Thus, a situational network does not itself supply the inventive concept that *SitNet I* found plausibly alleged because it may encompass conventional network architecture, without a push model, that lacks any technological improvement.

The PTAB's subsequent application of the *Alice* framework reinforces this conclusion. As discussed above, the Board rejected SitNet's proposed substitute claims because the recited event-node connections did not establish an unconventional network architecture or improve the functioning of computer technology. *See Meta*, 2025 WL 2639820, at *26-28. Thus, SitNet's persistent characterization of its network architecture as "unconventional," "innovative," or "enhanced," Am. Compl., ¶¶ 22-23, 26, 38 40, 44, 59, 67, does not establish an inventive concept. Such conclusory descriptions cannot overcome the court's broad

construction of a "situational network" without plausibly alleging how the claimed limitations produce specific technological improvements.

In sum, SitNet has not plausibly alleged that its claimed "unconventional network architecture" amounts to anything more than the "application of the abstract idea using common computer components." *Sanderling*, 65 F.4th at 705. The asserted claim limitations, considered individually and as an ordered combination, neither recite a specific improvement to computer functionality nor identify an inventive arrangement of components that transform the underlying abstract idea into a patent-eligible application. Accordingly, the Court concludes that the SitNet Patents lack an inventive concept under *Alice* step two and are therefore ineligible for patent protection under 35 U.S.C § 101.

**CONCLUSION**

For the foregoing reasons, Meta's motion to dismiss is GRANTED. The Clerk of Court is directed to terminate all pending motions and to close the case.

SO ORDERED.

Dated: November 17, 2026
New York, New York

Jeannette Vargas

JEANNETTE A. VARGAS
United States District Judge

## Appendix

| | |
|---|---|
| ’769 Patent, Claim 1 | A computer-implemented method comprising:<br><br>maintaining, by a networking server configured to maintain data defining a multi-dimensional information network, a database of a plurality of user nodes and multi-dimensional node-to-node links characterizing relationships between the plurality of user nodes via dimensions in the multi-dimensional information network, wherein at least some of the user nodes of the plurality of user nodes are respectively associated with user data;<br><br>providing, by the networking server, respective user devices associated with respective user nodes of the plurality of user nodes, respective composite data feeds that are based on the database of the plurality of user nodes and multi-dimensional node-to-node links;<br><br>establishing, by an event node server, an event node associated with an event in a particular geographical area, wherein the event node is discoverable to each respective user device of a first subset of a plurality of user devices by browsing a respective composite data feed;<br><br>joining the first subset of the plurality of user devices that have discovered the event node to the event node, wherein user devices of the first subset of the plurality of user devices are respectively associated with a first subset of user nodes of the multi-dimensional information network that are joined to a centralized architecture for the event node, wherein the event node is configured as a central node in the centralized architecture for accessing information associated with the event from a location in the multi-dimensional information network;<br><br>creating, by the networking server, based on the database of the plurality of user nodes and multi-dimensional node-to-node links, a projection of the plurality of user nodes, wherein the projection represents a second subset of user devices, wherein the second subset of user devices is selected based on respective distances of devices of the second subset of user devices from the event;<br><br>transmitting, by the networking server, respective requests to connect to the event node to the second subset of user devices, wherein the respective requests to connect are in forms of roll calls;<br><br>recording respective responses to the respective requests to connect;<br><br>making a subset of the respective responses viewable, via the event node, to a |

| | |
|---|---|
| | first device, associated with a first node, that is connected to the event node, wherein each response of the subset was received from a device associated with a node having a single degree of separation from the first node in the database of the plurality of user nodes and multi-dimensional node-to- node links;<br><br>analyzing (a) the database of the plurality of user nodes and multi-dimensional node-to-node links, and (b) data of user nodes of the multi-dimensional information network that are joined to the centralized architecture for the event node to identify at least one second node included in the database of the plurality of user nodes and multi-dimensional node-to-node links that is: (a) not connected to the event node, and (b) connected via at least one dimension to at least one user node of the multi-dimensional information network that is joined to the centralized architecture for the event node; and<br><br>delivering information to the at least one second node, wherein the information was received from an information node configured to store and provide supple mental information via the multi-dimensional information network. |
| ’815 Patent, Claim 1 | A method for delivering event information via a network using a networked system, the networked system comprising:<br><br>at least one networking server configured to maintain data defining a multi-dimensional information network, wherein each respective user node of the multi-dimensional information network is associated with respective user data;<br><br>a plurality of user devices configured to be connected with the at least one networking server via the network, wherein each of the plurality of user devices of the plurality of user devices is associated with a respective user node;<br><br>and at least one information node for storing and providing supplemental information via the network;<br><br>the method comprising: maintaining, by the at least one networking server, a database of a plurality of user nodes and multi-dimensional node-to-node links characterizing relationships between the plurality of user nodes via dimensions in the multi-dimensional information network;<br><br>providing, by the at least one networking server, to each respective user device associated with a respective user node of the plurality of user nodes a respective composite data feed that is based on a database of multi-dimensional node-to-node links;<br><br>establishing, by at least one event node server, an event node associated with an event in a particular geographical area, wherein the event node is |

| | |
|---|---|
| | discoverable to each respective user device of a first subset of the plurality of user devices by browsing the respective composite data feed;<br><br>joining at least the first subset of the plurality of user devices that have discovered the event node to the event node, wherein user devices associated with a first subset of user nodes of the multi-dimensional information network are joined to a centralized architecture for the event node;<br><br>wherein the event node is configured as a central node in the centralized architecture for accessing information associated with the event from at least one location in the multi-dimensional information network;<br><br>creating, by the at least one networking server, based on the database of multi-dimensional node-to-node links, a projection of the plurality of user nodes wherein the projection of the plurality of user nodes represents a second subset of user devices, wherein the second subset of user devices is selected based on respective distances of devices of the second subset of user devices from the event;<br><br>transmitting, by the at least one networking server, respective requests to connect to the event node to the second subset of user devices, wherein each respective request to connect is in a form of a roll call;<br><br>recording respective responses to the respective requests to connect to the event node;<br><br>making a subset of the respective responses viewable, via the event node, to a first device, associated with a first node, that is connected to the event node, wherein: each response of the subset was received from a device associated with a node having a single degree of separation from the first node in the database of multi-dimensional node-to-node links; and<br><br>analyzing (a) the database of multi-dimensional node- to-node links, and (b) data of user nodes of the multi-dimensional information network that are joined to the centralized architecture for the event node to:<br><br>identify at least one second node included in the database of multi-dimensional node-to-node links that is: (a) not connected to the event node, and (b) connected via at least one dimension to at least one user node of the multi-dimensional information network that is joined to the centralized architecture for the event node; and<br><br>delivering information to the at least one second node, wherein the information was received from the at least one information node. |

| | |
|---|---|
| ’325 Patent, Claim 1 | A method of creating a situational network based on a projection from a multi-dimensional personal information network and for transmitting information related to a situation, the method comprising:<br><br>creating, by an event node server, an event node in the multi-dimensional personal information network, wherein the multi-dimensional personal information network comprises member nodes, and the event node that corresponds to the situation, wherein the event node is discoverable by browsing the multi-dimensional personal information network;<br><br>identifying a subset of the member nodes of the multi-dimensional personal information network based on geographic proximity to the situation of a plurality of devices corresponding to the member nodes in the multi-dimensional personal information network;<br><br>transmitting an invitation to establish a respective link with the event node to devices corresponding to each node in the subset formed in step (b);<br><br>receiving a response from at least one of the devices from step (c) accepting the invitation to establish the respective link with the event node;<br><br>establishing the respective link with each device accepting the invitation to form the situational network;<br><br>identifying a target member node wherein the target member node is connected to at least one node of the subset of the member nodes via at least one dimension of the multi-dimensional personal information network; and<br><br>transmitting information related to the situation to the identified target member node. |
| ’463 Patent, Claim 1 | A method for forming a situational network and providing supplemental information comprising:<br><br>maintaining a database of a plurality of user nodes and multi-dimensional node-to-node links characterizing relationships between the plurality of user nodes via dimensions in a multi-dimensional information network;<br><br>obtaining an indication of an occurrence of a situation;<br><br>forming the situational network as a subset of the multi-dimensional information network based at least in part on the situation by:<br><br>establishing an event node corresponding to the situation, wherein the event node is discoverable to each respective user device of a plurality of user devices |

| | |
|---|---|
| | associated with the plurality of user nodes by browsing a data feed provided based on the database and wherein the event node contains information pertinent to the situation;<br><br>creating a first subset of the plurality of user nodes based on a determination that the first subset of the plurality of user nodes is associated with devices that are in geographic proximity to the situation;<br><br>presenting the information pertinent to the situation to devices associated with the first subset of the plurality of user nodes;<br><br>joining at least a first node of the first subset of the plurality of user nodes to the event node based on interaction with the presented information pertinent to the situation;<br><br>receiving an indication of the supplemental information;<br><br>analyzing the database that comprises the multi-dimensional node-to-node links to identify a second node included in the database that is connected via at least one dimension in the multi-dimensional information network to a third node of the database, wherein the at least one dimension is indicative of potential interest in the situation;<br><br>providing to a device associated with the second node the supplemental information; and<br><br>in response to interacting with the supplemental information, causing a redirection of a web browser application operating on the device associated with the second node to a webpage containing information related to the situation. |
| ’052 Patent, Claim 1 | A method for creating a situational network as a subset of a larger multi-dimensional information network comprising a plurality of nodes, wherein the situational network is formed in response to an event in a particular geographical area, and wherein the situational network is created for delivering information to selected user nodes based in at least part on the situational network, the method comprising:<br><br>maintaining, by a networking server configured to maintain data defining the multi-dimensional information network, a database comprising: (i) a plurality of user nodes, and (ii) a plurality of multi-dimensional node-to-node links characterizing relationships between the plurality of user nodes via dimensions in the multi-dimensional information network, wherein at least some respective user nodes of the plurality of user nodes are associated with respectively user data; |

| | |
|---|---|
| | providing, by the networking server, to each user device of a plurality of user devices associated with the plurality of user nodes, a respective composite data feed that based on the database;<br><br>establishing, by an event node server, an event node associated with the event in the particular geographical area, wherein the event node is discoverable by each user device of the plurality of user devices by browsing the respective composite data feed;<br><br>creating, by the networking server, based on the database, a projection of the plurality of user nodes, the projection comprising a first subset of the plurality of user nodes associated with a first subset of the plurality of user devices, wherein the projection is created based on respective distances of devices of the first subset of the plurality of user devices from the event;<br><br>transmitting, by the networking server, a respective request in a form of a roll call to connect to the event node to each respective device of the first subset of the plurality of user devices;<br><br>joining, based on responses to each of the respective requests, a second subset of the plurality of user nodes to a centralized architecture for the event node, wherein the event node is configured as a central node in the centralized architecture for accessing information associated with the event from a location in the multi-dimensional information network, and wherein the second subset of the plurality of user nodes is associated with a second subset of the plurality of user devices;<br><br>storing, as node-to-node links in the database, data representing the joining of the second subset of the plurality of user nodes to the event node;<br><br>analyzing the database to identify a third subset of the plurality of user nodes in the database based at least in part on the data representing the joining of the second subset of the plurality of user devices to the event node; and<br><br>delivering additional information to a third subset of user devices associated with the third subset of the plurality of user nodes, wherein the supplemental information was received from an information node configured to store and provide supplemental information via the multi-dimensional information network. |